Asher, Inc. ("Asher"), and others (all of the plaintiffs are hereinafter referred to as "Asher") filed an action against Molton, Allen Williams Corporation ("MAW"), alleging negligence, breach of contract, wantonness, and fraud and concealment in relation to the solicitation, procurement, and placement of Asher's boating insurance coverage with New England International Surety of America (NEISA). Asher served MAW with interrogatories and requests for production, which MAW partially answered. Asher moved to compel MAW to answer fully a certain interrogatory and requests for production. The trial court denied Asher's motion to compel. Asher petitions this Court for a writ of mandamus to direct the trial court to vacate his denial of the motion to compel and to order MAW to produce the requested documents.
All the plaintiffs are boat owners who purchased policies of insurance for their boating operations from NEISA. The plaintiffs allege that MAW, through its authorized agent and senior vice president, Otis Dunn, solicited their insurance business and placed it with NEISA.
NEISA was an insurance company established in 1986 by its parent company, New England International Surety, Inc., a Panamanian corporation affiliated with DynaSpan, which is apparently a risk retention group. Asher alleges that between April 8, 1988, and April 7, 1989, MAW solicited each of the plaintiff's insurance business. Asher alleges that prior to the time that MAW placed Asher's insurance coverage with NEISA, New England International Surety, Inc., NEISA, and DynaSpan had been ordered by numerous states, including Texas, Florida, and Mississippi, to cease transacting insurance business in those states. In October 1986, NEISA became licensed in Louisiana to insure wet marine business with a maximum exposure of $50,000. On April 6, 1989, the Louisiana insurance commissioner issued a cease and desist order to NEISA, and on April 14, *Page 735 
1989, the Louisiana insurance commissioner ordered NEISA into conservatorship.
Asher alleges that Dunn personally contacted each plaintiff and solicited its insurance business. The plaintiffs state that Dunn advised them that NEISA was a good, reputable, and financially sound company, although some of the plaintiffs told Dunn that they had heard NEISA had a poor reputation and was not financially stable. In a letter attached as an exhibit to Asher's petition, Dunn, addressing individuals who are not plaintiffs in this action, states that NEISA was domiciled in Louisiana and that other companies had attacked NEISA because "a company with a similar name was denied permission to operate in this country and moved its home office to Panama." Asher alleges that NEISA was not domiciled in Louisiana and points out that NEISA's parent company was the Panamanian company that Dunn mentioned in his letter. In that same letter Dunn claims that NEISA was doing business in Texas, Florida, and Mississippi, although Asher alleges that NEISA had been ordered to cease doing business in those states.
The interrogatory and requests for production that are the subject of the motion to compel and of this petition are as follows:
 "Interrogatory # 28. Please list the name, address and telephone number of every insured with whom you placed insurance with NEISA in 1987 and 1988."
 "Request for Production # 1. Please produce any and all documents mentioning or referring to New England International Surety of America, Inc., including, without limitation, publications, correspondence, inter-office communications, inter-office memoranda, inter-office minutes or notes of conferences, calendars, and diaries."
 "Request for Production # 4. Please produce any and all documents from Molton, Allen Williams to its assureds pertaining to New England International Surety of America, Inc. from 1984 through the present date."
 "Request for Production # 15. Please produce any and all documents related, directly or indirectly, to any complaints or claims made against Molton, Allen Williams and/or New England International Surety of America, Inc. as a result of or related to the insolvency or conservatorship of New England International Surety of America, Inc."
 "Request for Production # 18. Please produce all documents or records pertaining to any coverage placed with New England International Surety of America, Inc., including but not limited to, surplus lines contracts, insurance policies, certificates, cover notes, confirmations of insurance, and daily reports."
MAW partially answered the interrogatory and requests for production; however, MAW would not produce documentation concerning any assured other than the plaintiffs for whom MAW had placed insurance coverage with NEISA during the years 1987, 1988, and 1989. MAW states that there are approximately 50 such assureds who are not parties to this litigation.
Asher states that it seeks the information on the other assureds to prove its theory that MAW was engaged in a fraudulent scheme or plan to obtain a large portion of the wet marine insurance market in Mobile and Bayou La Batre by using a financially unreliable insurance company and to prove that, to that end, Dunn commonly made false representations in soliciting wet marine insurance business. Asher alleges that MAW enticed boat owners to switch to MAW by offering them lower premiums for coverage supposedly similar to the coverage that they had. NEISA, according to Asher, offered allegedly similar coverage for premiums that were substantially less than other companies' premiums; also, NEISA allegedly offered MAW *Page 736 
a dramatically higher commission than that offered by other companies. Asher further contends that at the time MAW entered into its business relationship with NEISA, MAW was aware that NEISA, New England International Surety, Inc., and DynaSpan were considered financially unsound by the national insurance community. Asher alleges that despite that knowledge, MAW proceeded to sell NEISA wet marine insurance not only to the plaintiffs but also to many others. Asher states that, accordingly, the information sought by the interrogatory and the requests for production would support its theory that MAW was engaged in a fraudulent scheme or plan to obtain a large portion of the wet marine insurance market in Mobile and Bayou La Batre.
To support its arguments, Asher cites two cases, Ex parteState Farm Mutual Automobile Insurance Co., 452 So.2d 861 (Ala. 1984), and Ex parte Allstate Insurance Co., 401 So.2d 749 (Ala. 1981). In Ex parte State Farm, Durwood Holt filed an action against State Farm Mutual Automobile Insurance Company, alleging fraud and bad faith arising out of a claim for uninsured motorist benefits by Holt, who was insured by State Farm.
Holt was injured in an automobile accident with an uninsured motorist. He had two policies of insurance with State Farm. The policies contained provisions forbidding stacking of the uninsured motorist benefits. Holt contended that State Farm had a plan or scheme to defraud its policyholders by retaining in its policies invalid provisions that restricted uninsured motorist coverage in contravention of Alabama law. Holt served the following interrogatory on State Farm:
 "Please set forth the name and address of each State Farm automobile liability insurance policyholder who has had since January 1971 to the present (a) two or more such policies providing uninsured motorist coverage and (b) been involved in a motor vehicle accident with an uninsured motorist and (c) been paid by you to such policyholder or to any other person or entity on such policyholder's behalf a total sum of $10,000.00 in full settlement of any claim which such policyholder had for uninsured motorist benefits."
State Farm objected to answering the interrogatory on the ground that it was "burdensome, oppressive, overly broad, not relevant to the issues in this case, [and] encompasse[d] a time limit which [was] unreasonable and [sought] information which [was] not discoverable under Rule 26 of the Alabama Rules of Civil Procedure."
The Court held that evidence of similar fraudulent acts was admissible to prove the alleged fraudulent scheme. Ex parteState Farm at 863; see also, Ex parte Allstate, supra;Cartwright v. Braly, 218 Ala. 49, 117 So. 477 (1928). The Court stated that Holt had alleged that State Farm had engaged in a scheme to defraud its policyholders by retaining a provision in its policies that had been invalid since 1970 and held that, inasmuch as evidence of similar fraudulent acts was admissible to prove an alleged fraudulent scheme, Holt was entitled to discover the information that he sought, but discovery was limited to policyholders in Alabama.
In Ex parte Allstate, supra, the Court reached a similar result. Douglas Goulet was injured in an automobile accident. Goulet's Allstate policy contained an allegedly misleading provision that sought to limit recovery on uninsured motorist insurance, in contravention of Alabama law. Goulet served an interrogatory on Allstate that sought information on the persons who had in the two years prior to the service of the interrogatory been paid $10,000 in uninsured motorist benefits and who, at the time of that payment, had had more than one vehicle listed on the policy as to which the $10,000 payment had been made.
Allstate objected to this interrogatory on the grounds that it was irrelevant and could not possibly lead to the discovery of admissible evidence; that it was overly broad, oppressive, unduly burdensome, extremely expensive, and an abuse of discovery; and that to release the information to plaintiff's counsel without the consent of *Page 737 
Allstate's insureds would violate the insureds' privacy interests. The plaintiffs filed a motion to compel Allstate to respond to that interrogatory, and the trial court granted that motion. Allstate filed in this Court a petition for a writ of mandamus, to review the trial judge's order. In upholding the trial court's ruling, the Court stated:
 "We cannot say from the evidence presented that there was . . . a clear abuse of discretion by the trial judge in the case before us. Under Rule 26 of the Alabama Rules of Civil Procedure, parties are entitled to discover 'any matter, not privileged, which is relevant to the subject matter involved in the pending action.' ARCP 26(b)(1). Furthermore, the Rule provides that '[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.' Id. Evidence of similar misrepresentations made to others by the defendant is admissible in a fraud action. Cartwright v. Braly, 218 Ala. 49, 117 So. 477 (1928). Therefore, the information sought, the identity of others who had been paid $10,000 although their policy listed more than one vehicle, could very easily lead to admissible evidence."
401 So.2d at 751.
MAW contends that Ex parte McTier, 414 So.2d 460 (Ala. 1982), is factually more similar to the present case than is Ex parteState Farm and Ex parte Allstate. In McTier, McTier's petition for writ of mandamus to direct the trial judge to compel answers to discovery in a suit for fraud was denied. McTier filed an action against Rollins Protective Services, Inc. ("Rollins"), claiming that its sales representative had fraudulently represented to him that he would own the home security protection system that was placed in his house by Rollins. McTier claimed that a Rollins salesman contacted him in an effort to sell him a burglar security system for his house. He contended that the Rollins salesman represented that when he had paid a certain amount he would own the security system and that Rollins would service and repair the equipment for a monthly maintenance fee. The document McTier signed, however, was a lease agreement and not a sales contract. As a proximate result of the alleged misrepresentation by the Rollins salesman, McTier claimed, he had paid $4,000 for the use of a system that he believed he was purchasing.
McTier sought discovery and propounded the following interrogatory to Rollins:
 "State the name and address of each person, firm or entity who leased a Rollins Protective Services, Inc. protective system from this defendant in 1976 and 1977 in Jefferson County, Alabama."
Rollins contended that answering this interrogatory would be unduly burdensome, involving hundreds of customers, four- and five-year-old records, business secrets as to customers' identities, and the customers' rights to privacy and also that the information sought would not reasonably lead to the discovery of admissible evidence. McTier filed a motion to compel answers and contended that the information requested was necessary to prove a common plan or scheme by Rollins to induce customers to sign an agreement such as he had signed.
The trial court held a hearing on the motion to compel and, after argument, denied it. McTier filed a petition for a writ of mandamus. The Court denied the petition, because there had not been a clear abuse of discretion by the trial judge in denying the motion to compel.
Despite MAW's contentions, McTier is not so factually similar to this case that we can decide this case based solely on it. On the other hand, neither Ex parte State Farm nor Ex parteAllstate is sufficiently similar factually to require a ruling favoring Asher, although the reasoning underlying those cases is apposite in this case.
MAW contends that the discovery request exposes it to irreparable harm, because, it says, disclosure of the other insureds' identities exposes MAW to loss of income and further litigation. We do not agree that in this situation the risks that *Page 738 
MAW described will subject it to irreparable harm. In this situation, MAW's fear that if it releases the names of the other insureds those insureds may be contacted by the plaintiffs and subsequently change their insurance or that disclosure of the information might lead to further litigation is not a sufficient legal ground to support a finding of irreparable harm.
MAW contends that Asher's discovery requests are cumulative and unnecessary, because, it says, each plaintiff can corroborate the claims of each other. We disagree. The evidence sought in the discovery requests may show the extent of MAW's alleged scheme or plan to garner the market for wet marine insurance. Asher seeks punitive damages under its fraud claims. A claim for punitive damages places the degree and gravity of MAW's allegedly culpable conduct directly in issue. Green OilCo. v. Hornsby, 539 So.2d 218 (Ala. 1989); City Bank of Alabamav. Eskridge, 521 So.2d 931 (Ala. 1988). The information sought by Asher provides evidence concerning the degree and gravity of MAW's allegedly wrongful conduct; it is neither cumulative nor unnecessary.
MAW contends that the discovery request is unduly burdensome. MAW itself states that the information sought would involve approximately 50 insureds. In this multiparty commercial fraud action, the production of 50 files would not appear to be unduly burdensome, especially when compared to the numbers of files the Court ordered produced in Ex parte State Farm and Exparte Allstate.
Finally, MAW argues that the requested discovery is not designed to lead to the discovery of admissible evidence. We disagree. A large portion of this opinion has discussed the manner in which the information sought might be used by Asher and admitted at trial, and there is no need to repeat that discussion. The information sought by the discovery may, in fact, lead to the discovery of admissible evidence. Ex parteState Farm, supra; Ex parte Allstate, supra; Green Oil Co. v.Hornsby, supra; City Bank of Alabama v. Eskridge, supra.
MAW has shown no valid grounds for the trial court's denial of Asher's motion to compel. Asher's discovery requests are proper under the Alabama Rules of Civil Procedure. The trial court abused its discretion when it denied the motion. The writ is due to be granted.
WRIT GRANTED.
HORNSBY, C.J., and JONES, ALMON, SHORES and ADAMS, JJ., concur.