David C. Howell and Thelma Howell petition this Court for a writ of mandamus directing the Mobile Circuit Court to vacate its protective order entered on August 11, 1995. The Howells contend that the trial court abused its discretion in limiting discovery in their action against New York Life Insurance Company ("New York Life") and its agents, Bennie Dickey and Sidney Brevard.
A writ of mandamus is an extraordinary writ by which "a party seeks emergency and immediate appellate review of an order that is otherwise interlocutory and not appealable." Rule 21(e)(4), Ala.R.App.P. Before a writ of mandamus can issue, the petitioner must show: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc.,586 So.2d 889, 891 (Ala. 1991).
The underlying action here is a fraud action brought by the Howells against New York Life, Dickey, and Brevard. The Howells allege that, in 1983, Dickey and Brevard represented to them that they could purchase from New York Life fully funded life insurance policies in the amount of $100,000, either by a one-time payment of $24,701 or by paying approximately $4,000 in annual premiums for seven to eight years. The Howells purchased two New York Life policies from Dickey and Brevard, one by the one-time payment option and the other through the payment of annual premiums. In 1993, the Howells discovered that the policies they had purchased were not fully funded, and that they would have to pay an additional premium amount to secure fully funded policies. They then filed this fraud action.
In their amended complaint, the Howells argued that the allegedly fraudulent activities of New York Life and its agents demonstrated a pattern and practice of intentional wrongful conduct. During discovery, the Howells served New York Life with interrogatories and a request for production of documents. One of the requests was as follows: "Produce any and all documentation relative to past or present clients of agents Bennie Dickey and Sidney Brevard including but not limited to client lists/client registers." New York Life objected to this request, and the Howells moved to compel New York Life to produce the information. New York Life then moved for a protective order. After a hearing, the trial court granted the motion to compel as to the lists of clients serviced by Dickey and Brevard between November 1, 1985, and August 1, 1993, but also issued a protective order. In summary, the trial court's protective order restricted the Howells' discovery in their case in the following manner:
1. The Howells' attorneys were not permitted to contact any other New York Life policyholders except by means of a standard letter, first circulated to New York Life attorneys and then approved by the trial court. The trial court also had to approve a postcard the Howells' attorneys proposed to include with the letter, which was to be used by the policyholders who chose to reply and who consented to be interviewed.
2. The Howells' attorneys could send the letters and postcards to only 25 of the policyholders from Dickey's client list and 25 from Brevard's client list. The names of those policyholders selected were be submitted to New York Life's attorneys.
3. The Howells' attorneys could interview only 15 of the consenting policyholders from each list. If at least 15 policyholders did not respond, the Howells' attorneys could petition the court for permission to contact an additional 25 policyholders. However, the Howells' attorneys were permitted to interview only 15 of each agent's policyholders. *Page 481 
The Howells' attorneys were required to notify New York Life immediately as to the name of any policyholder who consented to be interviewed. The Howells' attorneys could then contact the policyholders to schedule an interview.
4. New York Life's representatives were allowed to attend each interview and could take notes and tape-record the interview if the policyholder consented.
5. The Howells' attorneys were prohibited from representing in a subsequent action against New York Life or its agents any person interviewed.
The Howells petitioned this Court for a writ of mandamus, contending that the trial court abused its discretion in restricting the number of policyholders that could be interviewed, in mandating the method of contacting those policyholders, in requiring the presence of defense counsel at the interviews, and in prohibiting the Howells' attorneys from representing those policyholders in any future action.
The Alabama Rules of Civil Procedure are to be construed broadly to allow parties to obtain information needed in the preparation of their case. See Rule 1(c) and Rule 26, Ala.R.Civ.P.; Ex parte Asher, Inc., 569 So.2d 733 (Ala. 1990);Ex parte Clarke, 582 So.2d 1064 (Ala. 1991). The discovery process may lead to information helpful in formulating strategy in a case. It may also lead the attorney to conclude that there is in fact no actionable conduct and that that case should be dismissed. In its decisions regarding discovery, the trial court is vested with considerable, although not unlimited, discretion. This Court reviewed the law pertaining to these discovery matters in Ex parte Stephens, 676 So.2d 1307 (Ala. 1996).
In Ex parte Stephens, the plaintiffs alleged, among other things, that Life Insurance Company of Georgia had engaged in a pattern and practice of fraud. The trial court issued a protective order prohibiting the plaintiffs from contacting policyholders outside the presence of the defendants' representatives and prohibiting the plaintiffs from communicating to the policyholders the allegations of their case. This Court held that the trial court abused its discretion in so restricting the plaintiffs' discovery.
Considering both the discretion permitted the trial court in discovery matters and the strong policy of open discovery, we will review the discovery provisions at issue.
We will first consider the discovery order's provision prohibiting contact with the policyholders outside the presence of New York Life representatives.
This Court reviewed this same issue in Ex parte Stephens, supra. As this Court stated:
 "Pre-trial interviews play a major role in the way an attorney formulates the strategy of his case. In these interviews a lawyer attempts to find evidence to support his case or even to determine if he has a case. This requires that the attorney may in some instances reveal his mental impressions or conclusions on the case, often drawing from information he may have already developed from other sources; thus, the need for privacy while conducting these interviews. Requiring the presence of opposing counsel at interviews thwarts the exploratory purpose of conducting pre-trial interviews by virtually transforming the interviews into informal depositions."
Ex parte Stephens, 676 So.2d at 1312.
As was the case in Ex parte Stephens, this case does not present such rare and extraordinary circumstances so as to justify allowing the defendants' representatives to appear at pretrial interviews. The mental impressions or strategies of the Howells' attorneys, "part of an attorney's so-called work product," 676 So.2d at 1313, would clearly be disclosed if this provision were allowed to stand. We hold that the trial court abused its discretion in requiring that a New York Life representative be present at the interviews of the policyholders. Ex parte Stephens, supra.
We next review the discovery order's provisions allowing the Howells' attorneys to contact the policyholders only by a standard, court-approved letter and postcard and limiting the number of contacts to 25 policyholders of agent Dickey and 25 of agent Brevard, and limiting the number to be interviewed to 15 policyholders of each agent. *Page 482 
In Ex parte Clarke, supra, also an insurance fraud case, this Court reviewed a trial court's discovery order that required that the plaintiff's counsel, in interviewing policyholders, ask questions from a list of questions written by the trial court. The trial court also prohibited the plaintiff's attorney from answering any questions the interviewees might ask and also from undertaking to represent them. No restriction was placed upon the number of policyholders to be contacted. This Court held that the limitations on discovery were an abuse of discretion, stating:
 "The trial judge here, in fashioning a method of discovery, went beyond his discretion and created an awkward procedure, preventing meaningful contact with persons who may have possessed needed information. While not expressly preventing the discovery of the information sought, the discovery order could have, and, according to the plaintiff, did have the effect of preventing her from obtaining useful and meaningful information."
Ex parte Clarke, 582 So.2d at 1068.
We hold that the trial court's attempt in this case to limit the number of policyholders to be contacted and the manner in which they could be contacted was an arbitrary restriction on the discovery process. The limit of 25 persons from each policyholder list, with a maximum of 15 policyholders from each list who could be interviewed, would no doubt prevent the Howells from obtaining useful and meaningful information. The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters that can assist a party in presenting his or her case. See Comments to Rule 26, Ala.R.Civ.P. Given that this case was a fraud action alleging that the defendants had engaged in a pattern and practice of fraud, that purpose was thwarted by the limitation the trial court placed on the number of policyholders who could be interviewed. The limitation would prevent the discovery of any information after the fifteenth policyholder from each agent's list was interviewed, regardless of whether additional relevant information could be discovered.
It is also apparent that the limitation the trial court placed on the method by which the Howells' attorneys could contact the policyholders, i.e., only by court-approved, and defense counsel reviewed, letters and postcards, created an awkward procedure that could prevent the acquisition of information. While contacts by letter may certainly be a useful option for the Howells' attorneys in their attempts to gather evidence, it should not be mandated by the trial court as the exclusive method. As this Court noted in Ex parte Stephens, supra, it will be entirely up to the policyholders whether to consent to speak to the attorneys. The Howells' attorneys have the right to use any legal method to gather evidence in this case, including, but not limited to, letters and postcards.
We next review the trial court's prohibition against the Howells' attorneys' representing any person interviewed in any action against New York Life or its agents.
As this Court noted in Ex parte Stephens, "Nothing prevents a lawyer from accepting employment from someone whom he may have interviewed as a witness in another case, so long as the lawyer does not violate Rule 7.3, Ala.R.Prof. Conduct." 676 So.2d at 1314. That rule prohibits the solicitation of a prospective client for the attorney's pecuniary gain. It appears clear that the trial court's motive was to prevent the Howells' attorneys from soliciting employment by the policyholders. This amounts to an assumption that those attorneys would act in an unethical manner. As noted in Ex parte Stephens, it cannot and should not be presumed that an officer of the court will act in an unethical manner. Therefore, this provision is invalid as well.
For the reasons stated, we conclude that the trial court abused its discretion in limiting discovery. Therefore, the Howells are entitled to the relief they seek. Ex parte Alfab, supra. The petition for the writ of mandamus is granted, and the trial court is hereby directed to set aside its protective order.
WRIT GRANTED.* *Page 483 
SHORES, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., and HOUSTON, J., dissent.
MADDOX and BUTTS, JJ., recuse.
* Note from the reporter of decisions: An application for rehearing was filed on January 24, 1997.
While that application was pending, the Supreme Court, on June 30, 1997, entered the following order: "The [petitioners'] motion to dismiss the petition for writ of mandamus is granted, and the petition for writ of mandamus is hereby dismissed." The Court did not withdraw its opinion.