711 So.2d 979 (1998)
Ex parte Cecil Larry HORTON and Sue Horton.
(In re Cecil Larry HORTON and Sue Horton v. ALFA LIFE INSURANCE CORPORATION).
1961054.
Supreme Court of Alabama.
February 13, 1998.
Rehearing Denied March 20, 1998.
*980 Jere L. Beasley, W. Daniel "Dee" Miles III, and Joseph H. "Jay" Aughtman of Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery; and Mickey L. Johnson, Pelham, for petitioners.
Robert W. Bradford, Jr., and Jeff J. Bradwell of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery; and James W. Fuhrmeister of Griffin, Allison, May, Alvis & Fuhrmeister, Birmingham, for respondent Alfa Life Insurance Corporation.
Albert L. Jordan, Cecil H. Macoy, Jr., and Michael L. Jackson of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, for intervenor Linda Denson.
BUTTS, Justice.
Cecil Larry Horton and Sue Horton, plaintiffs in an action pending in the Shelby Circuit Court, have petitioned for a writ of mandamus directing Judge J. Michael Joiner to grant their motion to compel additional discovery from a client list provided to them by the defendant Alfa Life Insurance Corporation ("Alfa") relating to one of its insurance agents. We grant the writ.

I.
Linda Denson is an agent for Alfa. In June 1982, she sold Alfa whole life insurance policies to the Hortonsa $100,000 policy to Larry Horton and a $75,000 policy to his wife Sue Horton. The Hortons allege that Denson told them that the policies would be "paid up" after they had paid premiums for 10 years and that after 15 years the policies would have a combined cash value of $28,000 that the Hortons could withdraw while still maintaining the policies' death benefits.
In June 1986, four years after the Hortons had bought their first Alfa policies, Denson sold each of the Hortons an additional $50,000 whole life insurance policy. They allege that Denson told them that the policies would add to their existing life insurance coverage, that their total premiums would be lowered, and that they would get more insurance coverage for less money. In July 1990, Denson sold the Hortons two more life insurance policiesa $150,000 twenty-year term policy to Larry Horton and a $150,000 twenty-year decreasing term policy to Sue Horton. However, the Hortons allege that they did not know at the time (July 1990) that they were buying insurance; the Hortons allege that Denson told them that the forms they were signing at that time were merely to update their 1986 whole life insurance policies. These two 1990 term policies replaced the Hortons' whole life policies and were paid for by the cash values of the 1982 and 1986 whole life policies. The Hortons allege that they did not know they were buying these term life insurance policies and, thus, did not know these new policies were replacing the whole life insurance policies they had bought in 1982 and 1986 or that the new term policies would be paid for by the cash values of the whole life policies.
In September 1991, the Hortons questioned Denson regarding bills they were receiving from Alfa. They say they asked why they were receiving bills from Alfa asking for payments in addition to the premiums they were already paying monthly. They say Denson responded by telling them to ignore the additional bills and that she would clear up the matter. Denson had the Hortons sign several more forms; the Hortons say she told them these forms were necessary to clear up the billing problem. However, the Hortons say they continued to receive the billing notices from Alfa and they say Denson told them to continue ignoring them.
The Hortons eventually notified the Alabama Department of Insurance of their concerns. After a review by the Insurance Department, the Hortons learned that Denson had used the cash value of their whole life insurance policies to pay premiums on the term life insurance policies even though, the Hortons say, they had never authorized Alfa to transfer funds from their whole life policies. In March 1994, the Insurance Department informed the Hortons that in its opinion neither Denson nor Alfa had violated Alabama insurance law.
In April 1995, the Hortons filed a complaint against Alfa, alleging that through its agent, Denson, Alfa had made fraudulent misrepresentations to them that had induced them to purchase additional Alfa life insurance *981 policies that were unnecessary, and alleging that they had suffered damage as a result. The Hortons further alleged that Alfa's conduct toward them was the result of a pattern and practice of fraud and other intentional wrongful conduct.
During the discovery process, the Hortons requested from Alfa the names, addresses, and telephone numbers of all Alabama residents who had purchased Alfa life insurance policies over the previous five years. After Alfa objected to this request, the Hortons amended it to seek production of the names and addresses of all persons to whom Denson had sold Alfa life insurance policies during the previous 10 years ("the Denson client list"). Alfa again objected to the request. The trial court issued an order allowing the Hortons only limited discoverythe court ordered Alfa to produce the Denson client list, but it allowed the Hortons to contact only every fourth person on the list. The trial court stated that it believed such discovery would provide the Hortons a representative sample of Alfa policyholders and said that if the Hortons believed they needed additional discovery, the court would entertain a further request later.
Using a letter approved by the trial court, the Hortons' counsel attempted to contact 97 Alfa life insurance policyholders from the Denson client list. The Hortons say that 17 of those letters were returned to their counsel because the addresses Alfa had provided for those persons were not current. Only 12 persons responded to the letter from the Hortons' counsel. The Hortons, contending this response was inadequate to provide them with sufficient discovery, moved to compel additional discovery from the Denson client list. Alfa objected to the motion, and the court denied it. The Hortons made a second motion to compel additional discovery; the court denied that motion also. The Hortons then filed this petition for a writ of mandamus.

II.
The Hortons argue that this Court should order Judge Joiner to grant their motion for additional discovery from the Denson client list, because, they say, Judge Joiner abused his discretion in limiting their discovery in what they say was an arbitrary and restrictive manner. They argue that the Alabama Rules of Civil Procedure are to be construed broadly to allow parties the discovery they need to prepare their case. The Hortons contend that in their fraud case, in which they seek punitive damages and therefore have the burden of proving a high degree of culpability on the part of Alfa, it is well within the scope of discovery allowed under Rule 26, Ala. R. Civ. P., to discover information indicating whether Denson made the same or similar misrepresentations to other Alfa policyholders. In sum, they argue that they have a right to gather all the information necessary to determine whether Denson's alleged misconduct toward them as an Alfa agent was part of a pattern and practice of misconduct.
The Hortons argue that the limited response they received from persons on the Denson client list was the result of two factors: the trial court's restriction limiting them to contacting only every fourth person, and a letter Alfa mailed to the persons on the list telling them that their names and addresses had been given to a law firm in relation to a lawsuit brought by a discontented policyholder and telling them that "[t]he decision as to whether or not you wish to discuss your personal business or insurance coverage with this law firm is entirely up to you and you are under no legal obligation to do so." The Hortons note that this letter was not preapproved by the trial court, and they say Alfa wrote the letter with the intent to discourage response to the letter from the Hortons' counsel.
The list supplied by Alfa contained the names of 414 persons. The Hortons say that the 12 responses, from roughly 100 persons they were allowed to contact, did not provide them a representative sample of policyholders; that the response is insufficient to supply "pattern and practice" witnesses; and that the trial court abused its discretion in not granting their motion for further discovery from the list. In support of their contention, the Hortons cite this Court's opinions in Ex parte Howell, 704 So.2d 479 (Ala.1997), Ex parte Rowland, 669 So.2d 125 (Ala.1995), *982 and Ex parte Asher, Inc., 569 So.2d 733 (Ala.1990), in which we expounded on a plaintiff's broad right to discovery in fraud cases. In Ex parte Howell, in which the client lists of two insurance company agents were at issue, this Court held that a trial court had abused its discretion in limiting to only 25 the number of persons that could be contacted from each list and in further limiting to 15 the number of clients that could be interviewed from each list. We concluded in Ex parte Howell that the limitations would prevent the plaintiffs from obtaining meaningful discovery, and that the restrictions were arbitrary and amounted to an abuse of discretion by the trial court. The Hortons argue that the limitation imposed on their discovery is similar to the restrictions placed on the plaintiffs in Ex parte Howell and that this Court should rule that Judge Joiner abused his discretion and grant their petition for a writ of mandamus.
In response, Alfa contends that this Court should defer to the broad discretion and authority that is granted to trial courts over the discovery process and, thus, deny the Hortons' petition. Alfa says that the Hortons have already been accorded the broad discovery applicable to cases alleging fraud. Citing Ex parte Mobile Fixture & Equipment Co., 630 So.2d 358 (Ala.1993), Alfa says that if this were not a fraud case, the Hortons would not have been entitled to any discovery from the Denson customer list.
Alfa contends that the trial court properly exercised its discretion, saying that the court balanced the needs of the Hortons while protecting the interests of Linda Denson and her clients. Alfa notes that under Rule 26(c) a court is authorized to enter orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Alfa contends that the trial court allowed the Hortons to contact a significant and representative sample of the persons on the Denson client list and that authorizing any contact with more persons on the list would jeopardize Denson's relationship of confidence and trust she has with her clients. This argument is also made by Denson, who was allowed to intervene in this case in relation to discovery issues. Denson implies that her client list should be treated as a trade secret and be protected from further discovery, based on the Alabama Trade Secrets Act, Ala.Code 1975, §§ 8-27-1 to -6.
Both Alfa and Denson contend that our opinion in cases such as Ex parte Howell, Ex parte Rowland, and Ex parte Asher, Inc., supra, cited by the Hortons, do not support the Hortons' argument for additional discovery. Alfa argues that the trial court's limitation on the Hortons' discovery was not as restrictive as the limitations placed on discovery by the courts in those cases. They point out that in this case the trial court allowed the Hortons to contact roughly 100 persons from the Denson client list, four times the number allowed by the trial court in Ex parte Howell. Alfa and Denson contend that more than the roughly 100 persons the Hortons were allowed to contact became aware of the letter from the Hortons' counsel because, they say, certain persons on the list are relatives of persons who received the letter. Specifically, Alfa and Denson argue that as many as 255 of the 414 persons on the Denson client list could have been expected to know of the letter from the Hortons' counsel, and that those persons could have responded to the Hortons' request for information if they had chosen to. Alfa contends that the Hortons have no particularized need for discovery in addition to that already afforded them either directly or indirectly. Denson argues the inference that the Hortons received little response from those persons on the Denson client list because those persons are satisfied with Alfa's service and with her service and that a pattern and practice of similar alleged misconduct does not exist.

III.
Trial courts are vested with broad discretion in controlling the discovery process and in making rulings pertaining to discovery matters. Ex parte Heilig-Meyers Furniture Co., 684 So.2d 1292 (Ala.1996); Ex parte Thomas, 628 So.2d 483 (Ala.1993). A petition for the writ of mandamus is the proper means for seeking appellate review of the question whether a trial court has abused its discretion in a discovery matter. Ex parte Heilig-Meyers Furniture Co.; Ex *983 parte General Motors Acceptance Corp., 631 So.2d 990 (Ala.1994). However, mandamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte United Service Stations, Inc., 628 So.2d 501 (Ala.1993); Ex parte AmSouth Bank, N.A., 589 So.2d 715 (Ala.1991). In sum, the writ of mandamus will not issue to compel a trial court to change its discovery order unless the appellate court determines, based on all the facts that were before the trial court, that the trial court clearly abused its discretion. Ex parte Fuller, 600 So.2d 214 (Ala.1992); Ex parte Knox Kershaw, Inc., 562 So.2d 250 (Ala.1990).
This Court must determine whether the Hortons, in light of the nature of their claim, have demonstrated a particularized need for further discovery. The Hortons have alleged fraud. When a plaintiff has alleged fraud, discovery must necessarily be broader than in other cases; this is because of the heavy burden of proof imposed on one alleging fraud. Ex parte Clarke, 582 So.2d 1064 (Ala.1991); Pugh v. Southern Life & Health Ins. Co., 544 So.2d 143 (Ala.1988). It is well settled in this state that at trial of a fraud case a plaintiff can present evidence of prior similar misconduct to show the existence of a plan or scheme, motive, or intent on the part of a defendant. Rule 404(b), Ala. R. Evid.; Charles W. Gamble, McElroy's Alabama Evidence § 34.02(2) (5th ed.1996) (see the discussion and cases cited therein). Thus, "[e]vidence of similar misrepresentations made to others by the defendant is admissible in a fraud action." Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala.1981). Because the kind of evidence the Hortons seek is relevant and admissible, it is discoverable.
But are the Hortons entitled to discovery from the Denson client list beyond the 25% limitation allowed by the trial court? We conclude that they are. In recent years this Court has held several times that a restriction on discovery similar to that imposed in this case is an abuse of discretion. See Ex parte Howell, supra; Ex parte Stephens, 676 So.2d 1307 (Ala.1996); Ex parte Clarke, 582 So.2d 1064 (Ala.1991). These cases stand for the proposition that a trial court, in attempting to control the discovery process, abuses its discretion when it imposes a limitation or creates a procedure that prevents meaningful discovery of relevant and admissible evidence in a fraud action.
The Hortons' first request for discovery from Alfa called for information on all Alabama residents who had purchased Alfa life insurance policies over the last five years. The trial court denied that request, and the Hortons responded by voluntarily narrowing their request solely to the Denson client list. The trial court allowed discovery from only a quarter of that list. That restriction was an abuse of discretion. The discovery requested by the Hortonscontact with additional persons on the Denson client listis closely tailored to the kind of fraud alleged by the Hortons. As noted previously, the Denson client list is a list of persons to whom, like the Hortons, Denson sold Alfa life insurance policies during the previous 10 years. The Hortons are not requesting discovery of client lists from other Alfa agents, or lists of persons to whom Denson sold other kinds of Alfa insurance policies.
When the discovery request of a plaintiff alleging fraud is closely tailored to the nature of the fraud alleged, the discovery should be allowed in full, as long as the party opposing discovery does not show that the requested discovery is oppressive or overly burdensome. We conclude that providing the additional discovery requested by the Hortons would not be burdensome or oppressive to Alfa. Also, we conclude that the initial contact to be made by the Hortons, through a court-approved letter from the Hortons' counsel, is not intrusive or annoying toward the persons on the list or oppressive toward Denson.
Moreover, we believe that the United States Supreme Court's opinion in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), increased the necessity for a plaintiff alleging *984 fraud and seeking punitive damages to seek pretrial discovery of similar alleged acts of misconduct by the defendant. The United States Supreme Court stated: "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." 517 U.S. at 575, 116 S.Ct. at 1599. This Court had previously considered the reprehensibility of the defendant's conduct as one of several factors for a court to review under Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), when considering whether a punitive damages award was excessive, but the United States Supreme Court in its BMW opinion gave that factor greater significance. On remand in the BMW case, we noted that the factor of reprehensibility of the defendant's misconduct includes a consideration of "`the existence and frequency of similar past conduct.'" BMW of North America v. Gore, 701 So.2d 507, 512 (Ala. 1997) (quoting Green Oil, 539 So.2d at 223). Given this increased requirement that a plaintiff awarded punitive damages be able to demonstrate on a Green Oil review that the defendant's conduct was reprehensible and, thus, that the award was not excessive, the plaintiff has a concurrent need for broad pretrial discovery that might lead to evidence of similar misconduct by the defendant. To hold otherwise would be inconsistent.
In sum, we conclude that the Hortons have a legitimate and particularized need for further discovery from the Denson client list and that the trial court abused its discretion in denying their request. We grant the writ of mandamus.
WRIT GRANTED.
ALMON, SHORES, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., and HOUSTON and SEE, JJ., dissent.
MADDOX, J., recuses himself.
HOUSTON, Justice (dissenting).
I dissented in Ex parte Howell, 704 So.2d 479 (Ala.1997), and Ex parte Stephens, 676 So.2d 1307, 1316-17 (Ala.1996); and I dissent in this case. "Let the trial court be the trial court, without microscopic manipulation of its discretion by this court." Ex parte Howell, at 483 (Houston, J., dissenting).
HOOPER, C.J., concurs.