770 So.2d 76 (2000)
Ex parte Altonie HENRY.
(Re Altonie Henry v. Kansas City Life Insurance Company et al.)
1980407.
Supreme Court of Alabama.
May 5, 2000.
*78 C.S. Chiepalich and John R. Spencer of C.S. Chiepalich, P.C., Mobile, for petitioner.
Forrest S. Latta and J. Robert Tunipseed of Pierce, Ledyard, Latta & Wasden, P.C., Mobile, for respondent Kansas City Life Insurance Company.
Joseph D. Thetford, Mobile, for respondent John T. Walley.
BROWN, Justice.
Altonie Henry sued Kansas City Life Insurance Company ("KC Life") and one of its agents; her action is pending in the Mobile Circuit Court. She petitions for a writ of mandamus directing that court to vacate its order of October 7, 1998, wherein it set out certain conditions for Henry to comply with before proceeding with a portion of the discovery process. Additionally, Henry asks us to direct the circuit court to vacate its orders of April 24, 1998, October 26, 1998, and November 9, 1998, quashing several nonparty subpoenas issued to various insurance companies for whom John T. Walley, a defendant in Henry's pending action, had acted as an agent.
On November 14, 1994, Henry purchased a "whole life" insurance policy, in the face amount of $25,000, from KC Life, through its agent Walley. Henry paid the first month's premium of $52.98, in cash, to Walley. Thereafter, KC Life billed Henry directly for each monthly premium. Henry arranged with Walley to pay the premium to him in cash each month when he came by her house. Henry paid her monthly premium to Walley each month until October 1995, a total of 12 payments. However, only 5 of the 12 payments were credited to her policy. Henry claimed that KC Life or Walley had converted the remaining 7 premium payments.
Before he was employed with KC Life, Walley had been employed for 23 years as an agent with American General Life Insurance Company ("American General"). American General had terminated Walley's employment in 1994 for stealing a policy-holder's premiums by forging the policy-holder's signature to a premium-refund check. Within a month of his termination, Walley became an agent for KC Life. Henry contends that Walley was not truthful when he completed the application to become a licensed agent for KC Life. KC Life submitted Walley's license application to the Alabama Department of Insurance, along with an endorsement stating that Walley was "an individual of good business standing and character" and that KC Life was "satisfied that the applicant [was] trustworthy and qualified to act as [its] agent."
Henry sued KC Life and Walley, alleging misrepresentation, deceit, and fraudulent suppression, and seeking damages to include compensation for mental anguish. As to KC Life separately, Henry alleged that it had been negligent or wanton in *79 hiring, training, supervising, and retaining Walley as its agent. Specifically, Henry claimed that information concerning Walley's misconduct and his subsequent termination from American General had been available to KC Life at the time it hired him. Moreover, Henry claimed, KC Life knew when it hired him that Walley had been terminated by American General for conversion but nevertheless represented to the Alabama Department of Insurance that he was "honest and trustworthy."[1]
Along with the complaint, Henry filed certain interrogatories and requests for production. Interrogatory no. 13 and request for production no. 14 read as follows:
"13. State the name, address and telephone number of each and every person or other legal entity who purchased a life insurance policy from defendant, Walley, which was issued by defendant, Kansas City Life from 1992 until the present."
"14. Produce all applications relative to any Kansas City Life insurance policies sold by defendant, Walley, from 1992 until the present."
KC Life filed numerous objections, including objections to these two items. Henry filed a motion to compel answers and production. On October 7, 1998, the trial court granted Henry's motion to compel as to interrogatory no. 13 and request for production no. 14, but limited those discovery requests so as to relate only to those policies purchased in Alabama. Additionally, the court permitted KC Life to redact the policyholders' responses to health-related questions contained in those policies. Henry does not object to these restrictions. The court's order placed one final limitation on Henry's discovery:
"The court further ORDERS that counsel for the plaintiff shall submit to the Court a proposed letter for the Court's review and approval prior to any contact with any person made known to the plaintiff through the discovery items mentioned above. Said letter should make the recipient take the affirmative step of contacting the plaintiff's attorney if they so wish."
Henry objected to this limitation on her right of discovery.
Henry also had several nonparty subpoenas issued to various insurance companies for which Walley had acted as an agent. On April 24, 1998, the trial court entered an order quashing those nonparty subpoenas. Later, Henry filed notices of intent to seek the issuance of additional nonparty subpoenas to other insurance companies by which Walley had been employed. On October 26, 1996, and on November 9, 1998, the trial court quashed the additional nonparty subpoenas. On December 2, 1998, Henry filed this petition for the writ of mandamus.

I.
Rule 26, Ala.R.Civ.P., governs the discovery of information in civil actions. When a dispute arises over discovery matters, the resolution of the dispute is left to the sound discretion of the trial court. "Discovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant." Wolff v. Colonial Bank, 612 So.2d 1146, 1146 (Ala. 1992) (citations omitted); see also Ex parte Hicks, 727 So.2d 23, 33 (Ala.1998) (Maddox, J., dissenting).
Petitioning for the writ of mandamus is the proper method for determining whether a trial judge has abused his discretion in limiting discovery. Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala. 1981). The writ of mandamus is a drastic and extraordinary remedy, to be issued only when there is (1) a clear legal right in *80 the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte Horton, 711 So.2d 979, 983 (Ala.1998) (citing Ex parte United Serv. Stations, Inc., 628 So.2d 501 (Ala. 1993)); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991) (citing Martin v. Loeb & Co., 349 So.2d 9 (Ala.1977)). Moreover, this Court will not issue a writ of mandamus compelling a trial judge to alter a discovery order unless this Court "determines, based on all the facts that were before the trial court, that the trial court clearly abused its discretion." Ex parte Horton, 711 So.2d at 983. Moreover, "`[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief,' and `[t]he writ will not issue where the right in question is doubtful.'" Ex parte Bozeman, 420 So.2d 89, 91 (Ala.1982) (quoting Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala.1981)).
An insurance company's policyholder lists are confidential proprietary information to which a litigant has no right except through court-ordered discovery. Ex parte Stephens, 676 So.2d 1307, 1316 (Ala.1996) (Houston, J., dissenting); Ex parte Mobile Fixture & Equip. Co., 630 So.2d 358 (Ala.1993); Ex parte McTier, 414 So.2d 460 (Ala.1982).
"The first step in determining whether the court has abused its discretion is to determine the particularized need for discovery, in light of the nature of the claim." Ex parte Rowland, 669 So.2d 125, 127 (Ala.1995). A plaintiff in a fraud action "is accorded a broader range of discovery in order to meet the heavy burden imposed on one alleging fraud." Ex parte Clarke, 582 So.2d 1064, 1067 (Ala.1991). Here, just as in Rowland, the complaint alleged that the plaintiff had been defrauded by an insurer and its agent. Because she is alleging fraud, Henry is entitled to broader discovery than would normally be allowed. "When the discovery request of a plaintiff alleging fraud is closely tailored to the nature of the fraud alleged, the discovery should be allowed in full, as long as the party opposing discovery does not show that the requested discovery is oppressive or overly burdensome." Ex parte Horton, 711 So.2d at 983.
Henry's discovery requests sought the name of every person who had purchased a life insurance policy through Walley and issued by KC Life, since 1992, together with a copy of the application for the policy. These requests were overly broad and were not closely tailored to the nature of the fraud alleged in the complaint.[2] The trial court ordered that KC Life provide Henry with a list of the names of individuals in Alabama who had purchased such policies. Given that Walley and Henry were both residents of Mobile County, that Walley's alleged misconduct occurred in Mobile County, and that Henry filed her action in the Mobile Circuit Court, it would seem logical that most of Walley's sales for KC Life would have occurred within Alabama. Indeed, for the trial court not to restrict the discovery of other policyholders and their applications to Alabama would have made compliance with the requests unduly burdensome on KC Life. See Ex parte Finkbohner, 682 So.2d 409, 413 (Ala.1996). Thus, we conclude that the trial court properly limited Henry's discovery to the names of persons in Alabama who had purchased KC Life policies from Walley, together with copies of their redacted applications.
Although the trial court ordered KC Life to provide Henry with the names and applications of every person in Alabama *81 who had purchased a life insurance policy from KC Life, through Walley, since 1992, it placed certain conditions on how Henry could contact these persons. The judge ordered that Henry submit a proposed letter for the judge to review and approve before she could contact any person whose name had been provided in response to her discovery requests. Moreover, the court ordered, the letter "should make the recipient take the affirmative step of contacting the plaintiff's attorney if they so wish." This limitation was not an arbitrary limitation on Henry's right to conduct full and meaningful discovery in the manner she saw fit. Rather, the court was simply exercising the power and discretion afforded it in performing its obligation to oversee discovery matters. "Let the trial court be the trial court, without microscopic manipulation of its discretion by this Court." Ex parte Howell, 704 So.2d 479, 483 (Ala.1997) (Houston, J., dissenting).
Henry has not shown a clear abuse of discretion that would entitle her to a writ of mandamus. The trial court's order allows her to get the names of all persons in Alabama who had purchased a life insurance policy from KC Life, through Walley, since 1992, and it allows her the right to contact those persons. It was within the court's discretion to place limitations on the method Henry used to contact those persons.
We recognize that this holding conflicts with prior cases involving the question whether a trial judge clearly abused his discretion by placing limitations on the method by which the plaintiff's attorneys could contact other policyholders. See, e.g., Ex parte Hicks, supra; Ex parte Stephens, supra. To the extent those cases conflict with today's holding, they are overruled.

II.
Henry also argues that we should issue the writ on the basis that she had a clear legal right to discover the information she sought by issuance of the nonparty subpoenas that were quashed by the trial court.
Henry sued Walley and KC Life on October 29, 1997. She alleged that Walley and KC Life (under a theory of vicarious liability) were liable for misrepresentation, deceit, and fraudulent suppression as a result of Walley's conversion of her premium payments. Additionally, Henry alleged that KC Life was directly liable to her on the basis that it had negligently or wantonly hired and supervised Walley, and, through its negligence or wantonness, had allowed him to steal her premium payments.
Henry's direct claims against KC Life were dismissed, on the basis that she had filed her action more than two years after those claims had accrued and, thus, that they were barred by the statute of limitations. (§ 6-2-38(l), Ala.Code 1975.) See Booker v. United American Ins. Co., 700 So.2d 1333, 1339-40 (Ala.1997). Nevertheless, Henry had caused the issuance of nonparty subpoenas, seeking production of Walley's personnel files from a number of insurance companies for which he had previously worked. The trial court quashed those subpoenas.
Henry contends that she was entitled to discover this information because, she says, "Alabama law provides that in order for [her] to recover punitive damages from KC Life for the wrongful acts of Walley, [she] must demonstrate that KC Life knew or should have known that Walley was unfit to act as a KC Life agent." As authority for this proposition, Henry cites § 6-11-27(a), Ala.Code 1975, which states:
"A principal, employer, or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee, or servant of said principal, employer, or master unless the principal, employer, or master either: (i) knew or should have known of the unfitness of the *82 agent, employee, or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the acts of the agent, servant or employee were calculated to or did benefit the principal, employer, or other master, except where the plaintiff knowingly participated with the agent, servant, or employee to commit fraud or wrongful conduct with full knowledge of the import of his act."
Contrary to Henry's claim, KC Life could be vicariously liable for the misconduct of Walleyand thus be subject to the imposition of punitive damages without evidence that it knew or should have known of the unfitness of its agent. See Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1255 (Ala.1998) ("[A]n employer may be `vicariously liable for acts of its employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or ... acts done for the furtherance of the employer's interest.'"). This Court has never held that the kind of discovery Henry seeksdiscovery related to the question whether a principal/employer had knowledge of its agent/employee's unfitnessis permitted under § 6-11-27(a) in the absence of a claim of negligent or wanton hiring and/or supervision. In each of the cases wherein we have addressed the admissibility of such evidence, the plaintiffs claims sought both to impose vicarious liability for fraud and to recover for the principal's own negligent or wanton hiring and/or supervision. See Alfa Mut. Ins. Co. v. Roush, 723 So.2d at 1256-57; Life Ins. Co. of Georgia v. Johnson, 684 So.2d 685, 690 (Ala.), vacated on other grounds, 519 U.S. 923, 117 S.Ct. 288, 136 L.Ed.2d 207 (1996), overruled on other grounds, 701 So.2d 524 (Ala.1997); North-western Mut. Life Ins. Co. v. Sheridan, 630 So.2d 384, 390 (Ala.1993).
Sheridan involved the application of § 6-11-27(a) in the context of a stolen premium. There, the insurance company argued that § 6-11-27 shielded it from vicarious liability for punitive damages, because of a lack of evidence to prove the elements of § 6-11-27(a). Unlike Henry, the Sheridans did assert a timely claim alleging that the insurance company had negligently or wantonly hired and/or supervised its agent, together with a claim alleging fraud. We stated in Sheridan:
"In this connection, it must be observed that § 6-11-27 modifies the common-law rule of vicarious liability by requiring proof of a higher degree of culpability on the part of the principal. Thus, as a logical matter, if plaintiffs can meet the statutory requirement for vicarious liability, they will, in many cases, also have established the elements of their claims for wantonness in the hiring and supervision of the agent."
630 So.2d at 390; but see Alfa Mut. Ins. Co. v. Roush, 723 So.2d at 1256 ("a plaintiff who establishes a principal's vicarious liability for its agent's acts does not automatically establish a claim of wantonness against the principal"). Implicit in this language in Sheridan is a recognition that information contained in an employee's personnel file is relevant to establish a claim of negligent or wanton hiring and/or supervision. Section 6-11-27(a) does not constitute a license for unlimited discovery as to all subjects listed therein. Instead, the statute merely identifies certain situations that, if proved by the evidence and material to the claims set forth in the complaint, would justify or support the imposition of punitive damages against a defendant, on the basis of that defendant's vicarious liability for the acts of another. Because the claim alleging negligent or wanton supervision and/or hiring is no longer a part of Henry's case, she is not entitled to discovery of information or materials that would be material only as to that claim, such as Walley's personnel files from prior employers. For us to hold otherwise would allow Henry, in essence, *83 to revive a time-barred claim against KC Life.

III.
We conclude that the trial court did not abuse its discretion in limiting the manner by which Henry could contact others who had purchased life insurance policies from KC Life, through John Walley. We further conclude that the trial court did not abuse its discretion in quashing the nonparty subpoenas that sought information relevant only to a claim that had been dismissed because it was barred by the statute of limitations.
WRIT DENIED.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., concur.
LYONS, J., concurs in part and concurs in the result in part.
COOK, JOHNSTONE, and ENGLAND, JJ., dissent.
LYONS, Justice (concurring in part and concurring in the result in part).
I concur in Part II. However, I am troubled by the potential First Amendment implications of a restraint upon counsel's right to contact a witness on behalf of a client, a restraint approved by Part I. Absent a demonstrated need for some restriction on that right, such as evidence showing prior conduct by counsel in violation of ethical proscriptions, such restrictions as the trial court imposed in this case could raise First Amendment free-speech issues. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 104, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The defendant presented no such evidence in this case; neither, however, did the plaintiff claim a violation of her constitutional rights. Therefore, as to Part I, I concur in the result.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from the denial of a writ of mandamus. The writ should issue to redress both of the erroneous discovery decisions by the trial court.
The first erroneous discovery decision by the trial court is its limitation on the plaintiff's communication with certain potential material witnesses. The trial court correctly allows the plaintiff discovery of the names, addresses, and telephone numbers of certain "person[s] or other legal entit[ies] who purchased ... life insurance polic[ies] from defendant, Walley, which [were] issued by defendant, Kansas City Life from 1992 until the present." However, contrary to the express holdings of Ex parte Stephens, 676 So.2d 1307 (Ala.1996), Ex parte Howell, 704 So.2d 479 (Ala.1997), and Ex parte Hicks, 727 So.2d 23 (Ala. 1998), the trial court erroneously imposed the following restriction on the plaintiff:
"The Court further ORDERS that counsel for the plaintiff shall submit to the Court a proposed letter for the Court's review and approval prior to any contact with any person made known to the plaintiff through the discovery items mentioned above. Said letter should make the recipient take the affirmative step of contacting the plaintiff's attorney if they so wish."
This restriction unduly curtails the plaintiff's discovery rights. First, inevitably many of these potential witnesses will fail to "take the affirmative step of contacting the plaintiff's attorney," because of either oversight, lack of incentive, common inertia, or the pervasive psychology of not wanting to "get involved." Second, the restriction is arbitrarily discriminatory. Not only does our law not allow such a restriction on this category of witness, but likewise our law does not allow such a restriction on any other category of witness. For instance, would this Court countenance for one minute a trial judge's so restricting a defendant in its communications with doctors who had treated a plaintiff for a condition at issue, or with a plaintiff's friends or acquaintances who might know facts relating to liability or damages, or with a plaintiff's former employers *84 who might know the plaintiff's habits or complaints relating to liability or damages?
The main opinion resolves the problem of the trial judge's above-quoted restriction simply by expressly overruling Ex parte Hicks, supra, Ex parte Stephens, supra, and "prior cases" to like effect and adopting a conclusion contrary to those precedents without stating any reason whatsoever for disregarding the doctrine of stare decisis. To overrule a precedent without stating any good reason for making an exception to the doctrine of stare decisis seems to abandon the rule of law. The case of Lindsay v. United States Savings & Loan Co., 120 Ala. 156, 167, 24 So. 171 (1898), is instructive on stare decisis:
"It must be admitted that whatever may have been the differences of opinion as to the nature or character and obligation of the transactions involved, and whatever... room for such differences may have existed, having passed deliberate judicial exposition and declaration, a due regard for the maxim of stare decisis would have compelled judicial adherence, silencing controversy. `To consider matters thus adjudged as open to reiterated discussions would lead to great public inconvenience.' It would lessen confidence in the dignity and stability of the judgments of this, the court of last resort, provoking litigation or its continuance. The observations of Chancellor Kent are instructive, and have been often quoted by courts and text writers: `If a decision has been made upon solemn and mature consideration, the presumption is in favor of its correctness, and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions by it. It would, therefore, be extremely inconvenient to the public if precedents were not duly regarded and implicitly followed.' And further: `When a rule has once been deliberately adopted and declared, it ought not to be disturbed unless by a court of appeal or review and never by the same court, except for very urgent reasons, and upon a clear manifestation of error; and, if the practice were otherwise, it would be leaving us in a perplexing uncertainty as to the law.'"
The second erroneous discovery ruling by the trial court is its order quashing certain nonparty subpoenas issued by the plaintiff seeking information that Kansas City Life knew or should have known of the unfitness of its agent Walley while he was committing his tortious acts against the plaintiff. Section 6-11-27(a), Ala.Code 1975, authorizes the introduction of such evidence to prove the vicarious liability of a principal for punitive damages for the wrongful conduct of an agent under the doctrine of respondeat superior:
"A principal, employer, or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee, or servant of said principal, employer, or master unless the principal, employer, or master either: (i) knew or should have known of the unfitness of the agent, employee, or servant, and employed him or continued to employ him or used his services without proper instruction with a disregard of the rights or safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the acts of the agent, servant, or employee were calculated to or did benefit the principal, employer, or other master, except where the plaintiff knowingly participated with the agent, servant, or employee to commit fraud or wrongful conduct with full knowledge of the import of his act."
Rule 26(b)(1), Ala.R.Civ.P., provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Rule 401, Ala. R. Evid., provides: "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of *85 consequence to the determination of the action more probable or less probable than it would be without the evidence." The Advisory Committee's Notes explain:
"Rule 401 merges the separate evidentiary concepts of materiality and relevancy. No relevant evidence is to be admitted unless its logical relevancy goes toward a fact or inference that is `of consequence to the determination of the action.' By use of this phrase, Rule 401 adopts the common law materiality concept, as that concept has evolved."
All that § 6-11-27(a), supra, addresses are the requirements for imposing punitive damages in a claim of indirect, or vicarious, liability, which the plaintiff is pursuing. Yet the main opinion deprives the plaintiff of her discovery on the rationale that she does not have a direct-liability claim against the defendant.
The plaintiff began this action by asserting claims of direct liability as well as claims of indirect, or vicarious, liability against Kansas City Life Insurance Company. The claims of direct liability were for Kansas City Life's alleged negligence and wantonness in the hiring, training, supervision, and retention of Walley as its agent. The trial court dismissed these claims of direct liability; and the plaintiff does not contest the dismissal of these direct-liability claims. Rather, the plaintiff is pursuing her claims of indirect, or vicarious, liability against Kansas City Life for the wrongful conduct of its agent Walley under the doctrine of respondeat superior.
The main opinion, however, says,
"This Court has never held that the kind of discovery Henry seeksdiscovery related to the question whether a principal/employer had knowledge of its agent/employee's unfitnessis permitted under § 6-11-27(a) in the absence of a claim of negligent or wanton hiring and/or supervision."
770 So.2d at 82. The main opinion is saying, in effect, that the right to this type of discovery is dependent on the existence of a distinct or independent claim of direct liability against a principal for "negligent or wanton hiring and/or supervision." But § 6-11-27(a) contains no such requirement.
By its own terms, § 6-11-27(a) governs indirect or vicarious, liability of the principal that is, the liability of the principal for the conduct of an agentas distinguished from the direct liability of the principal for its own wrongdoing in negligently or wantonly hiring, training, supervising, or retaining the agent. Section 6-11-27(a) does not in any way require either the existence or the nonexistence of a distinct or independent claim against the principal on a theory of direct liability. Rather, this code section is entirely devoted to stating the requirements for recovering punitive damages against a principal on a claim of indirect, or vicarious, liability for the wrongful conduct of an agent under the doctrine of respondeat superior.
For a plaintiff to recover punitive damages against a principal for vicarious liability for the wrongful act of the agent, § 6-11-27(a) requires proof of at least one of four kinds of culpability in addition to the essential elements of the tort and the agency traditionally recognized by common law for vicarious liability. One of these four kinds of additional culpability alternatively required by § 6-11-27(a) for vicarious liability for punitive damages is that the principal "(i) knew or should have known of the unfitness of the agent, employee, or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others." Northwestern Mut. Life Ins. Co. v. Sheridan, 630 So.2d 384 (Ala.1993). The statutory addition of this culpability to the essential elements necessarily authorizes the discovery and proof of this culpability. The fortuity that such discovery and proof might also discover and prove a claim of direct liability against the principal for negligence or wantonness in the hiring, training, supervision, or retention of the *86 agent, see Sheridan, supra, in no way makes the existence of a distinct or independent direct-liability claim a prerequisite to such discovery or proof. The trial court order quashing the plaintiff's subpoenas and today's decision's denial of a writ of mandamus to vacate that order by the trial court deprive this plaintiff of her right to discover and to prove a case for punitive damages against this defendant in a way expressly authorized by § 6-11-27(a). This injustice is not eliminated or ameliorated by the existence of the three other alternatives provided by this Code section, as the actual circumstances of the particular case before us may or may not include these three other alternative kinds of culpability.
COOK and ENGLAND, JJ., concur.
NOTES
[1] However, the separate claims against KC Life were dismissed on the basis that they were barred by the two-year statute of limitations.
[2] Given that the record before us does not contain a copy of Henry's complaint, we are unable to say what the precise nature of the fraud alleged to have been committed by Walley and/or KC Life was, other than that the fraud was in some way connected to Walley's conversion of her premium payments.