Union Security Life Insurance Company ("Union Security"), the defendant in an action pending in the Lauderdale Circuit Court, petitions this Court for a writ of mandamus directing the circuit court to vacate its orders compelling Union Security to produce documents in response to three of the plaintiff's requests for production. We grant the petition in part and issue the writ.
In August 1996, Dan Turner, a salesman for Dan Jones Ford, Inc., sold a Ford pickup truck to the plaintiff, Dessie Lanier, and her husband, Billy Lanier. In connection with the truck purchase, the Laniers purchased a Union Security credit life insurance policy insuring Billy Lanier. Dessie Lanier claimed that she and her husband told the Dan Jones Ford employees that Billy Lanier was receiving disability benefits at that time, and she *Page 36 
claimed that the Dan Jones Ford employees knew that Billy Lanier had cancer but that neither she nor her husband was asked any "health questions" when they closed on the purchase of the truck and were issued the Union Seeurity insurance policy.
Billy Lanier died in March 1997. Dessie Lanier submitted a claim for benefits pursuant to the provisions of the credit life insurance policy purchased with the truck. Union Security denied the claim, on the basis that Billy Lanier had failed to disclose that he had cancer at the time the policy application was completed.
Dessie Lanier sued Union Security and Dan Jones Ford, Inc., alleging fraud, breach of contract, negligence, wantonness, and bad-faith refusal to pay insurance benefits, and seeking compensatory and punitive damages. Ms. Lanier's second filing requesting the production of documents asked Union Security to produce:
 "1. All credit life and!or credit disability applications you have received from residents of the State of Alabama in 1993, 1994, 1995, 1996, and 1997.
". . . .
 "5. All consumer complaints in the State of Alabama for 1993, 1994, 1995, 1996, and 1997 relating in any way to credit life and/or credit disability insurance policies.
 "6. All lawsuits involving credit life insurance policies filed against Union Security Life Insurance Company for 1993, 1994, 1995, 1996, and 1997."
Union Security's responses and objections to these three requests for production read:
 "1. The claim which forms the basis of this lawsuit involves credit life insurance, not credit disability insurance. Therefore, all documents sought regarding credit disability insurance applications are irrelevant and Union Security objects to this request because it is overly broad, unduly burdensome, and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Regarding credit life insurance applications, Union Security will produce the requested credit life applications in the State of Alabama for the requested time period that were received from customers of Dan Jones Ford, Inc. The allegations in this lawsuit are that the alleged fraud occurred at the point of sale between the Laniers and Dan Jones Ford, Inc., regarding misrepresentations about credit life insurance coverage on Billy Lanier. Therefore, any 'similar act' information sought by Dessie Lanier must be limited to Dan Jones Ford, Inc.
". . . .
 "5. The claim which forms the basis of this lawsuit involves credit life insurance, not credit disability insurance. Therefore, all documents sought regarding consumer complaints involving credit disability for the requested time period are irrelevant and Union Security objects to this request because it is overly broad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Regarding credit life insurance consumer complaints, to the extent any exist, Union Security possesses no consumer complaints in the State of Alabama for the requested time period that were received from customers of Dan Jones Ford, Inc. The allegations in this lawsuit indicate that the alleged fraud occurred at the point of sale between the Laniers and Dan Jones Ford, Inc., regarding misrepresentations about credit life insurance coverage on Billy Lanier. Therefore, any `similar act' information sought by Dessie Lanier must be limited to Dan Jones Ford, Inc.
 "6. Union Security objects to this request because it is overly broad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, the following lawsuits in the State of Alabama for the requested time period for cases involving claim denials under credit life insurance policies are as follows:
 "Wachovia Bank of Georgia, N.A. v. Charlotte DeWeese v. Union Security Life Insurance Company[;] Circuit Court of Chambers County, Alabama. *Page 37 
 "Evelyn Crocker v. Union Security Life Ins. Co.[;] Circuit Court of Choctaw County, Alabama[;] Civil Action No. CV-94-062-K."
(Emphasis added.)
Ms. Lanier moved to compel further responses. The trial court conducted a hearing on the motion and, on March 26, 1998, entered an order limiting the scope of discovery with regard to production of the documents listed in requests 1, 5, and 6, as follows:
 "1. Defendant, Union Security Life Insurance Company, is ORDERED to produce for inspection and copying all credit life applications it has received from residents of the State of Alabama in 1993, 1994, 1995, 1996, and 1997.
". . . .
 "5. Defendant, Union Security Life Insurance Company, is ORDERED to produce for inspection and copying all consumer complaints in the State of Alabama for 1993, 1994, 1995, 1996, and 1997 relating in any way to credit life insurance policies.
 "6. Defendant, Union Security Life Insurance Company, is ORDERED to produce for inspection and copying all documentation of all lawsuits involving credit life insurance policies filed against Union Security Life Insurance Company for 1993, 1994, 1995, 1996, and 1997, for the Southeast United States, including Alabama, Georgia, Florida, Mississippi, Louisiana, Tennessee, and Kentucky."
(Emphasis added.)
Union Security, seeking further limitations on discovery as to requests 1, 5, and 6, moved the trial court to alter, amend, or vacate its order. On May 15, 1998, the trial court denied the motion and gave Union Security 10 days within which to comply with the March 26 order.
Union Security petitioned this Court for a writ of mandamus directing the trial court to vacate the order compelling production of the documents described in requests 1, 5, and 6. Union Security also moved for a stay of the operation of the trial court's orders of March 26 and May 15 pending the outcome of its mandamus petition. We granted the motion to stay.
A challenge to a trial court's ruling on a discovery matter attacks the court's exercise of its broad discretion, and a petition for the writ of mandamus is the correct means for seeking appellate review of a discovery ruling. Ex parte CompassBank, 686 So.2d 1135 (Ala. 1996). However, because mandamus is a drastic remedy, and because the trial court is in a better position than this Court to rule on discovery matters, which are decided on a case-by-case analysis of facts and circumstances (Exparte Mobile Fixture Equipment Co., 630 So.2d 358, 360 (Ala. 1993), quoting Ex parte McTier, 414 So.2d 460, 461 (Ala. 1982)), we will not interfere with a trial court's ruling on a discovery matter unless that ruling is the result of clear abuse by the trial court (Ex parte Horton, 711 So.2d 979 (Ala. 1998), and the authorities cited therein).
To determine whether the trial court abused its discretion in ordering Union Security to comply with Ms. Lanier's requests 1, 5, and 6, we must consider the nature of her claim and whether, in light of that claim, she demonstrated a particularized need for the discovery she seeks. Ex parte Horton, supra. If the record reflects the requisite need f or discovery, then we must determine whether the trial court's order reflects an appropriate balance between meeting Ms. Lanier's discovery needs and protecting the legitimate confidentiality interests of Union Security and its customers. Id.
Clearly, the nature of Ms. Lanier's claims supports a finding of a need for broad discovery. The complaint alleges fraud, misrepresentation, and deceit, and resulting damage.
 "When a plaintiff has alleged fraud, discovery must necessarily be broader than in other cases; this is because of the heavy burden of proof imposed on one alleging fraud. It is well settled in this state that at trial of a fraud case a plaintiff can present evidence of prior similar misconduct to show the existence of a plan or scheme, motive, or intent on the part of a defendant. Rule 404 (b), Ala. R. Evid.; *Page 38 
Charles W. Gamble, McElroy's Alabama Evidence § 34.02 (2) (5th ed. 1996). . . . Thus, `[e]vidence of similar misrepresentations made to others by the defendant is admissible in a fraud action.' Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala. 1981)."
Ex parte Horton, 711 So.2d at 983 (some citations omitted).
Ms. Lanier's complaint reveals a particularized need for discovering evidence supporting allegations of fraud, including evidence of a pattern and practice of fraud on the part of the defendants similar to the fraud she alleges was committed by the defendants upon her and her husband. However, even in a fraud case, discovery is not unlimited (Ex parte Horton, supra), and "justice requires the trial court to protect a party from oppression or undue burden or expense." Ex parte Compass Bank, 686 So.2d at 1138.
With regard to request number 1 — as to which the court ordered production of all applications for Union Security credit life insurance received from Alabama residents for the period 1993 through 1997 — Union Security contends that Ms. Lanier's claim is that an employee of Dan Jones Ford knew her husband had cancer but did not ask the requisite health questions before filling out a Union Security application for life insurance on Billy Lanier. Therefore, Union Security argues, the conduct of Dan Jones Fordemployees is the basis for Ms. Lanier's allegation of systematic fraud and information contained in Union Security documents cannot establish a pattern and practice of fraud in oral representations made by Dan Jones Ford employees.
The trial court did not abuse its discretion in ordering Union Security to comply with request number 1, as modified by the March 26 order. Dan Jones Ford's answer to the complaint contained a cross-claim against Union Security in which Dan Jones Ford alleged:
 "[Dessie Lanier], in the original complaint filed on her behalf, has alleged, in a number of Counts, that Defendant Dan Jones [Ford] may be liable to [Dessie Lanier] as a result of the failure of Union Security Life Insurance Company to pay the claims pursuant to a policy of insurance allegedly issued by Union Security. Defendant Dan Jones [Ford] did not issue any insurance contract, is not a party to same, and, in the event there was a valid contract of insurance issued, this would have been done by Dan Jones [Ford] on behalf of Union Security. Dan Jones [Ford] had no role in the decision as to whether or not to pay any claim submitted, and such decision, if any were made, would have been made by Union Security."
The pattern and practice of fraud alleged by Ms. Lanier is ultimately reflected in applications for Union Security credit life insurance, and these documents are the result of the efforts of agents, such as Dan Jones Ford, acting on behalf of Union Security. Clearly, then, in light of the authorities discussed above and under the circumstances of this case, the discovery of applications for Union Security credit life insurance made by Alabama residents within a five-year period could produce evidence relevant to Ms. Lanier's claims, and the process of producing these documents will not be burdensome to Union Security.
With regard to request number a — as to which the court ordered production of all consumer complaints from Alabama regarding Union Security credit life insurance policies for the period 1993 through 1997 — Union Security argues that this is a "fishing expedition" for documents relating to acts of Union Security that may have generated customer complaints (e.g., allegations of miscalculation of premiums, improper debt-collection practices, improper assessment of fees and charges), but that are unrelated to the issues raised by Ms. Lanier's complaint.
We do not conclude that the discovery of a limited type of communication between Alabama residents and Union Security over a five-year period can be classified as a "fishing expedition" under the facts of this case. Customer complaints filed directly with Union Security may not have resulted in the institution of legal actions; clearly, however, the discovery of these direct complaints can lead to evidence of representations similar to *Page 39 
those made to the Laniers that were made to others by agents of Union Security and that resulted in the issuance of credit life insurance policies against which claims were made and payment was refused.
Ms. Lanier must carry a heavy burden of proof with regard to her claims that Union Security has engaged in a pattern and practice of fraud in 1) issuing life insurance policies that are based on improperly completed applications but that contain a provision allowing Union Security to investigate the insured's health after a claim has been filed against the policy, 2) accepting the premiums therefor, and 3) denying coverage based on allegedly unreported preexisting medical conditions. Requests 1 and 5 could produce relevant and necessary information regarding applications for Union Security credit life insurance and complaints that have been made with regard to the policies issued as a result of those applications. Producing this information will not place an undue burden on Union Security and will not compromise Union Security's confidentiality interest. "When the discovery request of a plaintiff alleging fraud is closely tailored to the nature of the fraud alleged, the discovery should be allowed in full, as long as the party opposing discovery does not show that the requested discovery is oppressive or overly burdensome." Ex parte Morton, 711 So.2d at 983.[1]
Further, Ms. Lanier claims punitive damages. Regarding such a claim, we have written:
 "[W]e believe that the United States Supreme Court's opinion in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), increased the necessity for a plaintiff alleging fraud and seeking punitive damages to seek pretrial discovery of similar alleged acts of misconduct by the defendant. The United States Supreme Court stated:
 `Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.' 517 U.S. at 575, 116 S.Ct. at 1599[, 134 L.Ed.2d at 826]."
Id., at 983-84.
The trial court did not abuse its discretion in ordering Union Security to comply with requests 1 and 5, as limited by the trial court's order. See, also, Ex parte Wal-Mart Stores, Inc.,682 So.2d 65 (Ala. 1996).
Union Security contends that by ordering it to comply with request number 6, as limited by the trial court's order — calling for production of all documents in all lawsuits filed against Union Security during the period 1993 through 1997 in Alabama, Georgia, Florida, Mississippi, Louisiana, Tennessee, and Kentucky involving credit life insurance — the trial court clearly abused its discretion in defining an arbitrary geographical "Southeast" that has no relevance to Ms. Lanier's allegations.
In Ex parte State Farm Mutual Automobile Insurance Co.,452 So.2d 861 (Ala. 1984), State Farm petitioned for a writ of mandamus, challenging the trial court's discovery order requiring State Farm to answer the following interrogatory:
 "Please set forth the name and address of each State Farm automobile liability insurance policy holder who has had since January 1971 to the present [1982](a) two or more such policies providing uninsured motorist coverage and (b) been involved in a motor vehicle accident with an uninsured motorist and (c) been paid by you to such policy holder or to any other person or entity on such policy holder's behalf the total sum of $10,000.00 in full settlement of any claim which such policy holder had for uninsured motorist benefits." *Page 40 
452 So.2d at 862. This Court held that the time period covered by the interrogatory was not unreasonable; however, with regard to the geographical area represented by the interrogatory, it held:
 "State Farm also argues that the geographical scope of the interrogatory demonstrates an abuse of discretion by the trial court. We agree that at this juncture, such is the case. No class action claim has been asserted by the plaintiff, and it would appear that if State Farm has engaged in the fraudulent scheme which the plaintiff sets out in his complaint, the records relating to Alabama policyholders over the years since 1971 should establish that fact."
Id., 452 So.2d at 863-64.
In this present case, the trial court's order encompassed what it defined as the "Southeast, " but our review of the record reveals no basis for this geographical requirement. If Union Security has engaged in the fraudulent practice alleged by Dessie Lanier, then the records relating to Union Security's activities in Alabama during the five-year period set out in request number 6 "should establish that fact." Requiring Union Security to produce records from the seven-state area defined in the March 26 order amounted to an unreasonable exercise of discretion by the trial court, and Union Security is entitled to a writ of mandamus ordering the trial court to vacate that portion of its order and to amend the order to conform with this opinion.
In her brief in opposition to Union Security's mandamus petition' Ms. Lanier argues that, pursuant to this Court's decision in Ex parte Reynolds Metals Co., 710 So.2d 897 (Ala. 1998), the petition should be dismissed as premature. According to her, Rule 26 (c), Ala. R. Civ. P., required Union Security to seek a protective order from the trial court before filing a mandamus petition with this Court, and its failure to do so rendered the petition premature.
In Reynolds Metals, the plaintiff filed a motion to compel Reynolds Metals to respond to discovery requests, which motion Reynolds Metals opposed. At the hearing on the plaintiffs motion to compel, the trial court ordered Reynolds Metals to respond to the plaintiff's discovery requests within 21 days. Reynolds Metals did not object to the trial court's order or move for a protective order; however, before the expiration of the 21 days it had been given to file its responses to the plaintiffs discovery requests, Reynolds Metals filed a mandamus petition with this Court, claiming that the discovery order was overly broad and unduly burdensome.
This Court pointed out that a party's entitlement to the writ of mandamus is based, in part, on showing the "lack of another adequate remedy." Holding that Reynolds Metals did have another adequate remedy, we stated:
 "Under Rule 26 (c), Ala. R. Civ. P., Reynolds may move the trial court for a protective order at any time before the expiration of the 21-day period prescribed in the order compelling discovery . . . We have previously held that a petitioner's failure to move for a protective order renders his petition premature. See Ex parte Sargent Indus., Inc., 466 So.2d 961, 963 (Ala. 1985) (stating that a party's failure to seek a protective order from the trial court bars mandamus relief because a protective order `is the appropriate procedural device for limiting or prohibiting discovery'); Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 734, 310 So.2d 210, 212 (1975) (same).
 "Reynolds argues that its filing of a prehearing motion in opposition to [the plaintiff's] motion to compel exempts it from the requirement that it challenge the trial court's ultimate ruling at the hearing by objecting or, thereafter, by a motion for a protective order. Rule 34 (b), Ala. R. Civ. P. Specifically, Reynolds argues that because Rule 37 (a)(2) states that the trial court `may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26 (c),' Reynolds was not required to move for such a protective order after the trial court had ruled at the hearing. Thus, Reynolds concludes that its petition for the writ of mandamus is not premature. We disagree. *Page 41 
 "The fact that Rule 37 (a)(2) vests the trial court with the discretion to grant protective orders does not relieve a party of the duty to bring an alleged error to the trial court's attention before seeking relief from an appellate court. The comments to Rule 37 (a)(2) provide that a `party' opposing a Rule 37 motion compelling discovery `can obtain a protective order.' This language clearly indicates that if the trial court does not exercise its discretion to grant a protective order sua sponte, some action by the party opposing discovery is required to obtain such an order. This interpretation is consistent with the general policy set forth in Sargent and Cole, supra, to afford the trial court the opportunity to address its alleged error before a party seeks mandamus relief from an appellate court to correct the alleged error. We therefore hold that Reynolds's failure to object at the hearing or to move for a protective order renders its petition premature."
Ex parte Reynolds Metals, 710 So.2d at 899-900 (citations omitted and emphasis added).
Union Security, however, filed a post-hearing motion with the trial court, asking that it alter, amend, or vacate its discovery order; thus it "afford[ed] the trial court the opportunity to address its alleged error before [Union Security sought] mandamus relief." See, also, Ex parte Compass Bank, supra. Thus, Union Security's petition for the writ of mandamus was not premature.
As to requests 1 and 5, the petition is denied. As to request number 6, the trial court is directed to set aside that portion of its order compelling disclosure as to the "Southeast United States" and to limit the required disclosure to conform with this opinion; otherwise, as to request number 6, the petition is denied.
PETITION GRANTED IN PART AND DENIED IN PART.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, and KENNEDY, JJ., concur.
[1] Union Security submitted the affidavit of ifs paralegal, in which she stated that collecting the information requested by Ms. Lanier would "take considerable man-hours, time, effort, and expense." This affidavit contains no specific statement of numbers (of riles or hours); it is a general statement of inconvenience and does not provide a sufficient basis for finding that requests 1 and 5 are oppressive or burdensome.
With regard to request number 6, the paralegal stated that the files were stored "in an offsite facility" and that "once the actual files were located, I would then have to individually review each file to determine which documents should be produced."