730 So.2d 1160 (1999)
Ex parte FIRST NATIONAL BANK OF PULASKI and Joe Mark Douthit.
(In re Gerald Mills v. Ray Blakenship et al.).
1980087.
Supreme Court of Alabama.
March 19, 1999.
*1161 Winston V. Legge, Jr., of Patton, Latham, Legge & Cole, Athens; and Joe W. Henry, Jr., of Henry, Henry & Speer, Pulaski, Tennessee, for petitioners.
B. Scott Shipman of Alexander, Corder, Plunk, Baker, Shelly & Shipman, P.C., Athens, for respondent.
HOUSTON, Justice.
First National Bank of Pulaski and Joe Mark Douthit are defendants in a fraud action pending in the Limestone Circuit Court. They have petitioned for a writ of mandamus ordering the trial court to issue a protective order barring the plaintiff's discovery request as being overly burdensome and intrusive. We deny the petition.
In March 1994, Gerald Mills sought to purchase a truck from Ray Blankenship. The men went to the bank that held the title to the truck, First National Bank of Pulaski, in Pulaski, Tennessee, in order for Mills to acquire a loan to finance the purchase. However, according to Mills, Joe Mark Douthit, the Bank's vice president, told Mills that Mills would have to buy, through the Bank, credit-life insurance on himself and on Blankenship (who the bank would require to be a cosigner on Mills's note) and credit-disability insurance for himself. Mills also claims that Douthit required Mills to purchase credit-life insurance on the total amount of the loan payments. Mills, Blankenship, and Douthit executed a promissory note and a security agreement, and Mills claims that Douthit said the credit-life insurance and credit-disability insurance policies would be sent to Mills at his home in Alabama. Mills claims that he never received these policies.
In March 1996, after experiencing a series of difficulties with the vehicle, Mills filed a complaint in the Limestone County Circuit Court, alleging, among other things, that First National Bank of Pulaski and Douthit had engaged in various fraudulent activities relating to the requirement that Mills purchase the credit-life and credit-disability insurance described above. Later that year, Mills filed his first set of interrogatories to the Bank and Douthit, requesting the names and addresses of all persons living in Alabama for whom, from 1992 through 1995, the Bank and Douthit had set up the same insurance/loan arrangement alleged by Mills. In response, the Bank and Douthit moved for a protective order under Ala. R. Civ. P. Rule 26(c).
In June 1997, Mills filed a motion to compel the Bank and Douthit to answer the interrogatories; the court granted that motion. Later, the court set aside its order to compel and held a hearing on the issue whether the Bank and Douthit should be made to respond. Before the court made any further ruling on the matter, Mills amended his interrogatories in order to alleviate concerns of the Bank and Douthit for the privacy of their customers' financial information. Mills's amendments left only one remaining interrogatory; it requested the names and addresses of all Alabama residents who had borrowed money from the Bank (through its agent Douthit) in the years 1994 and 1995. In March 1998, the court granted Mills's motion to compel the Bank *1162 and Douthit to answer this interrogatory and denied their motion for a protective order. This petition followed.
In order for a writ of mandamus to issue, the party seeking relief must clearly demonstrate that a right to relief certainly exists. See State ex rel. Munchus v. Conradi, 642 So.2d 467, 469 (Ala.1994) (stating that a writ of mandamus will issue only when the petitioner has demonstrated an "indisputable" right to the relief sought); Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala. 1981) (stating that a writ of mandamus will not issue unless the right to the relief sought is "clear and certain with no reasonable basis for controversy"). Specifically with regard to writs of mandamus in discovery matters, we noted in Ex parte Nissei Sangyo America, Ltd., 577 So.2d 912 (Ala.1991), the general rule in such cases:
"It is well settled that the Rules on deposition and discovery are to be broadly and liberally construed. Rule 26(c) [Alabama Rules of Civil Procedure] recognizes, however, that the right to discovery is not unlimited, and the trial court has broad powers to control the use of the process to prevent its abuse by any party. The Rule does not allow an arbitrary limit on discovery; instead, it vests the trial court with judicial discretion in the discovery process. The question on review, then, becomes one of whether, under all the circumstances, the court has abused this discretion. An appellate court may not decide whether it would, in the first instance, have permitted the prayed for discovery."
577 So.2d at 914 (quoting Assured Investors Life Ins. Co. v. National Union Assocs., Inc., 362 So.2d 228, 231-32 (Ala.1978) (citations omitted)); see also Ex parte Fuller, 600 So.2d 214 (Ala.1992); Ex parte Knox Kershaw, Inc., 562 So.2d 250 (Ala.1990). The question we must answer, then, is whether the trial judge abused his discretion in denying the request for a protective order.
We recently dealt with a similar situation in Ex parte Union Security Life Ins. Co., 723 So.2d 34 (Ala.1998). In that case, involving claims of fraud in regard to the sale of insurance, Union Security sought a writ of mandamus directing the trial court to vacate an order compelling production of documents described in certain discovery requests. Those requests had asked Union Security to produce, in part:
"1. All credit life and/or credit disability applications [Union Security had] received from residents of the State of Alabama in 1993, 1994, 1995, 1996, and 1997.
". . . .
"5. All consumer complaints in the State of Alabama for 1993, 1994, 1995, 1996, and 1997 relating in any way to credit life and/or credit disability insurance policies."
723 So.2d at 36. Union Security objected to the discovery requests, contending that they were "overly broad [and] unduly burdensome" and that they sought "information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence." Id.
Finding no abuse of discretion by the trial judge in ordering Union Security to comply with these discovery requests, this Court stated:
"To determine whether the trial court abused its discretion in ordering Union Security to comply with Ms. Lanier's [discovery] requests ... we must consider the nature of her claim and whether, in light of that claim, she demonstrated a particularized need for the discovery she seeks. Ex parte Horton, [711 So.2d 979 (Ala.1998)]. If the record reflects the requisite need for discovery, then we must determine whether the trial court's order reflects an appropriate balance between meeting Ms. Lanier's discovery needs and protecting the legitimate confidentiality interests of Union Security and its customers. Id.

"Clearly, the nature of Ms. Lanier's claims supports a finding of a need for broad discovery. The complaint alleges fraud, misrepresentation, and deceit, and resulting damage.
"`When a plaintiff has alleged fraud, discovery must necessarily be broader than in other cases; this is because of the heavy burden of proof imposed on one alleging fraud. It is well settled in this state that at trial of a fraud case a *1163 plaintiff can present evidence of prior similar misconduct to show the existence of a plan or scheme, motive, or intent on the part of a defendant.' Rule 404(b), Ala. R. Evid.; Charles W. Gamble, McElroy's Alabama Evidence § 34.02(2) (5th ed. 1996).... Thus, "[e]vidence of similar misrepresentations made to others by the defendant is admissible in a fraud action." Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala.1981).'
"Ex parte Horton, 711 So.2d at 983 (some citations omitted).
"Ms. Lanier's complaint reveals a particularized need for discovering evidence supporting allegations of fraud, including evidence of a pattern and practice of fraud on the part of the defendants similar to the fraud she alleges was committed by the defendants upon her and her husband."
723 So.2d at 37-38. Also, we noted in Ex parte Union Security that a claim for punitive damages increases a plaintiff's need for documentation that would evidence a pattern of reprehensible conduct:
"`[W]e believe that the United States Supreme Court's opinion in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), increased the necessity for a plaintiff alleging fraud and seeking punitive damages to seek pretrial discovery of similar alleged acts of misconduct by the defendant. The United States Supreme Court stated: "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." 517 U.S. at 575, 116 S.Ct. at 1599[, 134 L.Ed.2d at 826].'"
723 So.2d at 39 (quoting Ex parte Horton, 711 So.2d at 983-84).
Mills alleges various sorts of fraudulent activity on the part of the Bank and Douthit and he requests punitive damages; therefore, we conclude that his complaint reveals a sufficient "particularized need," as prescribed by Ex parte Union Security, for the type of documentation he is requesting, such as evidence indicating a pattern and practice of fraudulent conduct of the type that Mills claims to have experienced. The trial judge certainly could have found that the request for names and addresses of others in Alabama who have obtained loans from the Bank is reasonably calculated to provide admissible evidence concerning any representations or activities on the part of the Bank and Douthit with respect to other customers.
The only other question we must answer is whether the trial court's order compelling compliance properly balances Mills's discovery needs with both 1) the Bank's and Douthit's interests in protecting the confidentiality of their customers and 2) the Bank's and Douthit's concerns that the order imposes an undue burden. See Ex parte Compass Bank, 686 So.2d 1135, 1138 (Ala.1996) (stating that "even in a fraud case, justice requires the trial court to protect a party from oppression or undue burden or expense"). The Bank and Douthit argue that this case presents an "undue burden" problem; specifically, they argue that to respond to Mills's interrogatory would be a great hardship and would invade the privacy of their customers. They claim that, to comply, they would be forced to manually review a minimum of 15,500 documents. They say this task would require a full-time worker two to three weeks to accomplish. However, evidence in the record indicates that the actual cost to the Bank and Douthit would be only somewhere between $800 and $1,260.
The most appropriate way to determine whether a proper "balance of interests" has been achieved is to compare the facts of this case with those in similar cases where mandamus relief was sought. In doing so, we note that the information sought here concerns only Alabama residents who had borrowed money within a two-year span. By contrast, the information sought in Ex parte Union Security covered a five-year span and involved not only insurance applications received during that time but also all consumer complaints that were related to insurance. We held in that case that "[p]roducing this information will not place an undue burden on Union Security and will not compromise Union Security's confidentiality interest." Ex parte Union Security, 723 So.2d at 39. Given the similarity of the facts of this case and the facts of Ex parte Union Security, we *1164 cannot say the trial judge improperly balanced the relative concerns of Mills and the Bank and Douthit. See also Ex parte American Carpet Sales, Inc., 703 So.2d 950 (Ala. 1997) (upholding, with a restriction to a two-year period, a discovery order in a fraud action that would require a review of at least 30,000 files, a review that would have cost at least $12,000 if allowed to cover a five-year span as the plaintiff had requested); Ex parte Clarke, 582 So.2d 1064 (Ala.1991) (finding an abuse of discretion in restricting the ability of a plaintiff to broadly acquire, in a fraud case, addresses and telephone numbers of others who had obtained certain life insurance policies from a defendant); Ex parte Allstate Ins. Co., 401 So.2d 749 (Ala.1981) (finding no abuse of discretion by a trial judge in approving an interrogatory that would require an extensive manual search of documents and the development of a computer program that would cost over $1,000). Compare Ex parte Compass Bank, supra, 686 So.2d 1135 (Ala.1996) (holding that a discovery order imposed an undue burden; it would have overreached into irrelevant information and would have required the review of documents concerning some 35,000 transactions).
We find no abuse of discretion by the trial judge in compelling the Bank and Douthit to answer Mills's sole remaining interrogatory; therefore, mandamus relief is inappropriate.
WRIT DENIED.
HOOPER, C.J., and MADDOX, KENNEDY, COOK, LYONS, BROWN, and JOHNSTONE, JJ., concur.
SEE, J., concurs in the result.