999 So.2d 476 (2008)
Ex parte JOHN ALDEN LIFE INSURANCE COMPANY.
(In re H.M. Beasley
v.
Fortis Insurance Company and John Alden Life Insurance Company).
1070414.
Supreme Court of Alabama.
June 20, 2008.
*478 Jennifer M. Busby, Richard C. Keller, and R. Frank Springfield of Burr & Forman, LLP, Birmingham, for petitioner.
C. Carter Clay of Pittman, Dutton, Kirby & Hellums, P.C., Birmingham, for respondent.
COBB, Chief Justice.
John Alden Life Insurance Company ("JALIC") petitions this Court for a writ of mandamus ordering the Barbour Circuit Court to vacate its December 4, 2007, order compelling JALIC to produce a list of names and addresses of individuals who have been issued individual medical certificates by JALIC (known as a JALIC Form 390), from June 1, 2002, through December *479 4, 2007, and directing the trial court to enter a protective order preventing JALIC from having to produce the names and addresses of its insureds. We deny the petition.
In June 2002, Jeffrey Fredrickson, a JALIC agent, approached H.M. Beasley regarding the purchase of health insurance from JALIC. According to Beasley, Fredrickson marketed the health plan as a true "group" health-insurance product. Specifically, Beasley recalled that Fredrickson explained to him that JALIC's health-insurance plan was a "group-type policy" and thus that the rates and premiums would be lower than his current policy and that his premiums would be rated as part of a group. Beasley also contends that Fredrickson represented to him that any future increases in premiums would be uniform as to all policyholders in the group. Beasley purchased a family-plan health-insurance policy under a "Master Group Policy" from JALIC, effective July 1, 2002, to cover both him and his ex-wife. Beasley's initial monthly premiums for the family plan were $245.76; however, by 2005 his monthly premiums had increased to $440.21. Beasley asserts that this increase was not instituted uniformly among all policyholders and that JALIC employs a rating system that discriminates against various policyholders based upon certain personal factors such as claim history and the policyholder's health.
On July 1, 2005, Beasley sued JALIC and Fortis Insurance Company,[1] the administrator of the policy, alleging breach of contract, negligence, recklessness, wantonness, fraud in the sale of the insurance policy, suppression, breach of a fiduciary duty, negligent training and supervision of Fredrickson, and negligent procurement of the insurance policy by Fredrickson. Contemporaneously with the filing of the complaint, Beasley served JALIC with interrogatories and requests for production. In his interrogatories and requests of production, Beasley requested the following:
"14. Please produce a list of names and addresses for any and all policyholders in the State of Alabama that have the same or similar type of health insurance policy with [JALIC and Fortis] as [Beasley] during the years 1998 through 2005."
On May 11, 2006, JALIC responded to Beasley's request for production and objected to the discovery of the information sought in request no. 14, alleging that it was overly broad and unduly burdensome, sought information for an unreasonable and inappropriate time frame, and sought information that was confidential and proprietary. JALIC further objected that the information sought was "health information" as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d(4) and that disclosure of the information would be a violation of the HIPAA privacy rule, 45 C.F.R. §§ 160 and 164. On August 23, 2006, Beasley's attorney wrote JALIC's attorney asking that within 15 days he provide the documents and information JALIC had not produced. On December 5, 2006, Beasley's attorney again wrote JALIC's attorney inquiring as to the status of the outstanding discovery.
On May 31, 2007, and again on June 6, 2007, Beasley filed with the trial court motions to compel the production of the documents and information sought in request no. 14. Fortis and JALIC responded to Beasley's motions to compel on July 19, 2007. The response asserted that Beasley has never been insured by Fortis *480 and that it did not possess the information requested in Beasley's discovery responses. It further responded that JALIC does not maintain a list of the names and addresses of JALIC's certificate holders in Alabama, that its policyholder lists are confidential proprietary information, that Beasley had not demonstrated a particularized need for the discovery, that the discovery request was not closely tailored to the nature of his fraud claim, and that production of the requested information would be a violation of HIPAA and the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. On July 26, 2007, the trial court entered an order requiring JALIC to provide a list of names and addresses of individuals in Alabama who have been covered during the period from July 1, 2002, to July 26, 2007, by the same or similar type of health insurance as Beasley.
On August 15, 2007, JALIC and Fortis filed a motion asking the trial court to reconsider its order of July 26, 2007, and also asking for a protective order preventing JALIC and Fortis from producing any of the information requested in Beasley's request no. 14. Additionally, JALIC and Fortis requested that if they had to produce the information requested that it be designated as confidential and that Beasley be able to contact JALIC's insureds only via a court-approved letter. On December 4, 2007, the trial court granted JALIC and Fortis's motion in part so that Fortis was not required to produce any documents requested in Beasley's request no. 14; however, the trial court ordered JALIC to produce the names and addresses requested in request no. 14 within 20 days of the order. The trial court also ordered (1) that the list JALIC produce be designated "confidential," (2) that the list not be used for purposes other than the current litigation, (3) that the list must be returned to JALIC at the conclusion of the case, (4) that Beasley's attorneys make contact with any individual on the list only one time and through a court-approved letter, (5) that, within 30 days of mailing the letter and within 5 days of any response made after the initial 30-day period, Beasley notify JALIC of the individuals who responded to the letter, and (6) that Beasley notify JALIC if he wished to make additional contact with any individual on the list and explain why such contact was needed and if JALIC did not agree to the additional contact then Beasley must petition the trial court to make the additional contact. Attached to the order was a court-approved form letter that Beasley's attorneys were to use to contact JALIC's insureds.
On December 20, 2007, JALIC filed this petition for the writ of mandamus. JALIC contemporaneously filed an emergency motion to stay compliance with the trial court's December 4, 2007, order, which this Court granted.
"Rule 26, Ala. R. Civ. P., governs the discovery of information in civil actions. When a dispute arises over discovery matters, the resolution of the dispute is left to the sound discretion of the trial court. `Discovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant.' Wolff v. Colonial Bank, 612 So.2d 1146, 1146 (Ala.1992) (citations omitted); see also Ex parte Hicks, 727 So.2d 23, 33 (Ala.1998) (Maddox, J., dissenting).
"Petitioning for the writ of mandamus is the proper method for determining whether a trial judge has abused his discretion in limiting discovery. Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala.1981). The writ of mandamus is a drastic and extraordinary remedy, *481 to be issued only when there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte Horton, 711 So.2d 979, 983 (Ala.1998) (citing Ex parte United Serv. Stations, Inc., 628 So.2d 501 (Ala. 1993)); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991) (citing Martin v. Loeb & Co., 349 So.2d 9 (Ala.1977)). Moreover, this Court will not issue a writ of mandamus compelling a trial judge to alter a discovery order unless this Court `determines, based on all the facts that were before the trial court, that the trial court clearly abused its discretion.' Ex parte Horton, 711 So.2d at 983. Moreover, `"[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief," and "[t]he writ will not issue where the right in question is doubtful."' Ex parte Bozeman, 420 So.2d 89, 91 (Ala.1982) (quoting Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala. 1981))."
Ex parte Henry, 770 So.2d 76, 79-80 (Ala. 2000). Furthermore, "mandamus will issue to reverse a trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal." Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810, 813 (Ala.2003). "Moreover, we are also aware of the fundamental disinclination of the appellate courts to intrude into the trial court's province in conducting the litigation process." Ex parte Cooper Tire & Rubber Co., 987 So.2d 1090, 1101 (Ala. 2007). As has been previously noted, this Court is bound to "`[l]et the trial court be the trial court, without microscopic manipulation of its discretion by this Court.'" Ex parte Henry, 770 So.2d at 81 (quoting Ex parte Howell, 704 So.2d 479, 483 (Ala. 1997) (Houston, J., dissenting)).
JALIC asserts that it has a legal right to a writ of mandamus because, it argues, the trial court's December 4, 2007, order (1) disregards a privilege, (2) compels the production of irrelevant or duplicative documents, the production of which would constitute harassment, and (3) disregards the fact that Beasley has failed to demonstrate a "particularized need" for the discovery. This Court agrees that if the discovery ordered by the trial court in this case disregards a privilege, JALIC will have no remedy by appeal after it has complied with the discovery order.
JALIC first argues that the trial court's order violates the HIPAA privacy rule because "none of JALIC's insureds have authorized the disclosure of their names and addresses to [Beasley], which is protected information under HIPAA." (JALIC's petition, p. 15.) Although the HIPAA privacy rule does provide that an insured must authorize the disclosure of individually identifiable health information, exceptions to this rule exist.
In 1996, the United States Congress enacted, and the President signed into law, Pub.L. No. 104-191, 110 Stat.1936  HIPAA. As another court has noted:
"Congress enacted HIPAA principally to increase the portability and continuity of health insurance and to simplify administrative procedures so as to reduce health care costs (see HIPAA, Pub.L. 104-191, 110 U.S. Stat 1936 (1996)). The `corner-stone' of HIPAA's `administrative simplification' provisions (Pub.L. 104-191 §§ 261-264) was the electronic record, `believed in the 1990s to be the future key to the efficient delivery of *482 health care (see Kutzko, Boyer, Thoman and Scott, HIPAA in Real Time: Practical Implications of the Federal Privacy Rule, 51 Drake L.Rev. 403, 407 [2002-2003]). Thus, HIPAA mandated national standards for electronic medical data management. At the same time, this shift away from paper-based to systematized electronic records was perceived to threaten the confidentiality of sensitive patient information. As a result, HIPAA also authorized the Secretary of the United States Department of Health and Human Services (HHS) to promulgate standards governing disclosure of patient health information in the event Congress did not pass privacy legislation within three years of HIPAA's enactment.
"When Congress did not meet its self-imposed deadline, HHS proposed and subsequently adopted a Privacy Rule (see 45 CFR parts 160, 164; see also South Carolina Med. Assn. v. Thompson, 327 F.3d 346 [4th Cir.2003] [discussing HIPAA and rejecting claims that Congress impermissibly delegated its legislative function to HHS]). When devising the Privacy Rule, HHS sought to `strike[] a balance that permits important uses of information, while protecting the privacy of people who seek care and healing'; and to fashion a scheme sufficiently `flexible and comprehensive to cover the variety of uses and disclosures that need to be addressed' (United States Department of Health and Human Services, Office for Civil Rights, Summary of the HIPAA Privacy Rule, at 1, available at http://www. hhs.gov/ocr/privacysummary.pdf [last revised May 2003]). In most instances, compliance with the Rule was required by April 14, 2003 (45 C.F.R. [§ ]164.534)."
Arons v. Jutkowitz, 9 N.Y.3d 393, 411-12, 880 N.E.2d 831, 839-40, 850 N.Y.S.2d 345, 353-54 (2007) (footnote omitted).
The HIPAA privacy rule generally forbids a covered entity, including a group-health-plan or health-insurance issuer, from using an individual's "protected health information"[2] except as provided by the rule. 45 C.F.R. § 164.502(a) (2007). Disclosure is mandated when an individual seeks his or her own health information from a covered entity and when the Secretary of the Department of Health and Human Services asks for such information from a covered entity in order to enforce HIPAA. 45 C.F.R. § 164.502(a)(2); see also Arons, 9 N.Y.3d at 413, 880 N.E.2d at 840, 850 N.Y.S.2d at 354. The rule permits disclosure in other circumstances. 45 C.F.R. § 164.502(a)(1).
"Uses and disclosures qualifying as permissive under the Privacy Rule are just that  for purposes of compliance with *483 HIPAA, the covered entity is permitted, but not required, to use the information or make the disclosure.... Stated another way, a covered entity, such as a physician, who releases a patient's protected health information in a way permitted by the Privacy Rule does not violate HIPAA; however, neither the statute nor the Rule requires the physician to release this information."
Arons, 9 N.Y.3d at 413, 880 N.E.2d at 840, 850 N.Y.S.2d at 354.
One of the exceptions provided for in the HIPAA privacy rule is for judicial and administrative proceedings. 45 C.F.R. § 164.512 (2007) provides, in pertinent part:
"A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section....
"....
"(e) Standard: Disclosures for judicial and administrative proceedings  (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
"(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
"(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
"(A) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is subject of the protected health information that has been requested has been given notice of the request; or
"(B) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of ... this section."
The HIPAA privacy rule defines a "qualified protective order" as an order of a court or a stipulation of the parties to the litigation that
"(A) [p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
"(B) [r]equires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding."
45 C.F.R. § 164.512(e)(1)(v).
As the Assistant Secretary for Planning and Evaluation of the Department of Health and Human Services has noted:
"When a request is made pursuant to an order from a court or administrative tribunal, a covered entity may disclose the information requested without additional process. For example, a subpoena issued by a court constitutes a disclosure which is required by law as defined in this rule, and nothing in this rule is intended to interfere with the ability of the covered entity to comply with such subpoena."
Standards for Privacy of Individually Identifiable Health Information, 65 Fed.Reg. 82462-01, 82529 (Dec. 28, 2000). Thus, the *484 HIPAA privacy rule does not impede a covered entity from complying with a court order, nor does it impede responding to discovery when a qualified protective order has been entered. That being said, the HIPAA privacy rule also does not prohibit a covered entity from objecting to a discovery order on other grounds such as a recognized privilege.
Given the plain language of the HIPAA privacy rule, this Court disagrees with JALIC's argument that in ordering it to produce the information sought in Beasley's request no. 14 the trial court disregarded a privilege created by HIPAA for JALIC's insureds. The HIPAA privacy rule clearly permits JALIC to comply with the trial court's discovery order without violating HIPAA. In fact, the trial court's order exceeds the standards set by the HIPAA privacy rule. The HIPAA privacy rule provides that JALIC is permitted to comply with the trial court's order so long as JALIC discloses only the information expressly authorized by the order. 45 C.F.R. § 164.512(e)(1)(i). Although not required to do so, the trial court entered an order that meets the standards of a "qualified protective order" as that term is defined by the HIPAA privacy rule: the order provides that the names and addresses on the list are to be designated as confidential, prohibits the use of the information for any other purpose other than the current litigation, and requires that the list be returned to JALIC at the conclusion of the litigation. Additionally, the order requires Beasley to make initial contact with JALIC's insureds through a court-approved letter, and the language of the letter requires the insureds to initiate any further contact with Beasley. Thus, this Court concludes that the trial court's order of December 4, 2007, requiring disclosure of the names and addresses of JALIC's insureds in Alabama with the same or similar type of health-insurance policy as Beasley does not violate the HIPAA privacy rule.
JALIC also argues that the trial court exceeded its discretion by allowing Beasley to discover the names and addresses of its Alabama insureds because, it argues, Beasley's request was not closely tailored to any of the allegations in his complaint, Beasley has failed to demonstrate a particularized need for the information, and the information sought is patently irrelevant. JALIC premises these arguments on Beasley's deposition testimony, which it contends contradicts the allegations of Beasley's fraud claim. Specifically, Beasley asserted in his complaint that
"[a]t the time [Beasley] applied for and agreed to purchase the referenced health insurance policy, it was represented to him by [JALIC's] employee/agent... that the health insurance policy was a policy which would help keep premiums at a lower level and that any increase in the premiums in the future would have to be equally increased over all the policyholders at the same rate. Upon information and belief, [JALIC] employed a rating system that discriminated against various policyholder based upon certain personal factors such as claims experience and/or health status. This fact was suppressed from [Beasley]. [Beasley], in reasonable reliance upon the aforesaid representations, purchased said policy of health insurance."
In his deposition, Beasley testified as follows:
"[JALIC'S COUNSEL]: Let me ask with respect to the certificate you purchased from [JALIC]. Is it fair to say the reason you purchased that was your dealings with Mr. Fredrickson?
"[BEASLEY]: No.

*485 "[JALIC'S COUNSEL]: Why did you purchase it? What caused you to purchase insurance from [JALIC]?
"[BEASLEY]: Well, I purchased it, you know, because I was looking for better coverage and lower premiums."
(Emphasis added.) Thus, JALIC argues, Beasley does not have a viable fraud claim because, it argues, he did not rely on the representations of Fredrickson, its agent. Thus, JALIC argues, the trial court should not have permitted the discovery.
"`The first step in determining whether the court has abused its discretion is to determine the particularized need for discovery, in light of the nature of the claim.' Ex parte Rowland, 669 So.2d 125, 127 (Ala.1995). A plaintiff in a fraud action `is accorded a broader range of discovery in order to meet the heavy burden imposed on one alleging fraud.' Ex parte Clarke, 582 So.2d 1064, 1067 (Ala.1991).... `When the discovery request of a plaintiff alleging fraud is closely tailored to the nature of the fraud alleged, the discovery should be allowed in full, as long as the party opposing discovery does not show that the requested discovery is oppressive or overly burdensome.' Ex parte Horton, 711 So.2d [979,] 983 [(Ala.1998)]."
Ex parte Henry, 770 So.2d at 80.
Given the imprecision of the term "dealings" in the question posed as to why Beasley purchased the policy and Beasley's testimony regarding Fredrickson's representations as to the determination of any future rate change, the question of reliance cannot at this stage of the proceedings be resolved in favor of JALIC and thereby insulate it from discovery relating to Beasley's fraud claim.
This Court on several occasions has permitted the discovery of the name of nonparty customers in other fraud cases. See, e.g., Ex parte First Nat'l Bank of Pulaski, 730 So.2d 1160 (Ala.1999) (holding that bank-loan transactions of other customers over a two-year period were discoverable); Ex parte Clarke, 582 So.2d 1064 (Ala.1991) (holding that plaintiff was entitled to meaningful contact with other purchasers of conversion policies like the one it had purchased); Ex parte State Farm Mut. Auto. Ins. Co., 452 So.2d 861 (Ala.1984) (holding that the identity of other insureds located in Alabama with uninsured-motorist coverage was discoverable); and Ex parte Allstate Ins. Co., 401 So.2d 749 (Ala.1981) (holding that the identity of other insureds with uninsured-motorist coverage who had been paid the one-vehicle benefit when more than one vehicle was covered by the policy was discoverable).
In Ex parte Orkin, Inc., 960 So.2d 635 (Ala.2006), however, this Court held that a plaintiff was not entitled to review approximately 23,000 customer files located in 5 states and spanning a 25-year period because the discovery was not tailored closely enough to the plaintiff's fraud claim. This Court noted in a footnote that "[a]n example of `tailored' discovery would be a request that, during a relevant time period, Orkin produce lawsuits, claims, or customer complaints similar to the allegations made by the [plaintiffs]." Orkin, 960 So.2d at 642 n. 8.
Given the nature of the fraud claimed by Beasley, this case is more akin to Ex parte State Farm Mutual Auto Insurance Co. and Ex parte Allstate Insurance Co. than to Ex parte Orkin. Likewise, the trial court is permitting Beasley to discover only the names and addresses of other insureds located in Alabama who purchased the same health-insurance policy from JALIC over an approximately five-year period. Such discovery is closely tailored to the fraud claim asserted in Beasley's complaint.
*486 JALIC also argues that the information Beasley is seeking is patently irrelevant. Its argument is premised on its contention that Beasley did not rely on any representations by Fredrickson in purchasing the health insurance. As explained above, this Court does not agree with JALIC's contention. Therefore, this Court cannot find that the trial court clearly exceeded its discretion in permitting the discovery.
JALIC further argues that Beasley has not shown a "particularized need" for the information he is attempting to discover. In Ex parte Union Security Life Insurance Co., 723 So.2d 34 (Ala. 1998), this Court held that "[t]o determine whether the trial court abused its discretion in ordering [a defendant] to comply with [a plaintiff's discovery request], we must consider the nature of her claim and whether, in light of that claim, she demonstrated a particularized need for the discovery she seeks." 723 So.2d at 37. JALIC's argument rises and falls on its assertion that Beasley does not actually state a fraud claim and it relies on Beasley's deposition testimony as support for that assertion. As stated previously, this Court does not agree with JALIC's assertion. JALIC also argues that Beasley has not shown the trial court why he needs this information. This argument, however, is answered by Ex parte Union Security:
"Clearly, the nature of [the plaintiff's] claims supports a finding of a need for broad discovery. The complaint alleges fraud, misrepresentation, and deceit, and resulting damage.
"`When a plaintiff has alleged fraud, discovery must necessarily be broader than in other cases; this is because of the heavy burden of proof imposed on one alleging fraud. It is well settled in this state that at trial of a fraud case a plaintiff can present evidence of prior similar misconduct to show existence of a plan or scheme, motive, or intent on the part of the defendant. Rule 404(b), Ala. R. Evid.; Charles W. Gamble, McElroy's Alabama Evidence § 34.02(2)(5th ed.1996).... Thus, "[e]vidence of similar misrepresentations made by the defendant is admissible in a fraud action." Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala.1981).'
"Ex parte Horton, 711 So.2d [979,] 983 [(Ala.1998)] (some citations omitted)."
723 So.2d at 37-38. Thus, because of the nature of Beasley's fraud claim, he has a particularized need for the discovery.[3]
Finally, JALIC argues that the trial court exceeded its discretion in ordering the discovery because the trial court's order does not reflect an appropriate balance between meeting Beasley's discovery needs and protecting JALIC and the interests of its insureds. The law is settled that "[i]f the record reflects the requisite need for discovery, then we must determine whether the trial court's order reflects an appropriate balance between meeting [the plaintiff's] discovery needs and protecting the legitimate confidentiality of [the insurer] and its customers." Union Security, 723 So.2d at 37. As JALIC notes, this Court has previously held *487 that "[a]n insurance company's policyholder lists are confidential proprietary information to which a litigant has no right except through court-ordered discovery." Ex parte Henry, 770 So.2d at 80. However, the discovery here is court-ordered; thus, JALIC's argument is without credence. JALIC also argues that the discovery order does not take into consideration that JALIC will be inundated with calls from insureds asking why their information was provided to Beasley and that insureds may decide to have another insurer issue their policies because JALIC disclosed their information. JALIC also argues that disclosing this information will establish a precedent that allows plaintiffs' counsel to go on "fishing expeditions" to obtain client information under the guise of pattern-and-practice discovery, thus potentially damaging insurers' business in Alabama and causing insurers to choose not to issue insurance to Alabama residents. As noted previously, this Court has permitted the production of insureds' names and addresses in cases where the plaintiff's claims are based on fraud. See, e.g., Ex parte Clarke, supra, Ex parte State Farm Mut. Auto. Ins. Co., supra, and Ex parte Allstate Ins. Co., supra.
The trial court's order is crafted so as to permit Beasley to obtain the discovery he needs to substantiate his fraud claim while protecting JALIC's interests. The list of the names and addresses of JALIC's insureds must be marked "confidential" under a protective order previously entered by the trial court. The trial court's order provides that the list cannot be used for any purpose other than the current litigation, and Beasley must return the list at the conclusion of the litigation. Furthermore, the order permits Beasley to make initial contact with the insureds only through one court-approved letter, and the order places the burden on the insureds who have been contacted to contact Beasley's attorneys if they feel they too have been defrauded and want to be a potential witness in the trial. The court-approved letter states that JALIC was ordered by the trial court to produce a list of policyholders, thus quelling JALIC's concerns that its insureds will believe it produced this information voluntarily. The trial court's order also requires Beasley to inform JALIC of each individual who responds to the letter within 30 days of the mailing of the letter and thereafter to inform JALIC within 5 days of receiving a response from an insured. The trial court's order further provides that if Beasley desires to make additional contact with any insured he must inform JALIC of the identity of the individual and the reason for contacting the individual. If JALIC objects, the order provides that Beasley must petition the trial court to make such contact. As demonstrated, this order strikes an appropriate balance between Beasley's discovery needs and JALIC's obligation to its insureds. Thus, the trial court did not exceed its discretion in ordering the discovery.
We therefore conclude that the trial court did not exceed its discretion in ordering JALIC to respond to Beasley's discovery request. The HIPAA privacy rule does not impede the discovery of the information sought, and the information sought is not patently irrelevant. Likewise Beasley has a particularized need for the discovery because of his fraud claim, and the discovery request is sufficiently tailored to his fraud claim. JALIC's petition for a writ of mandamus is hereby denied.
PETITION DENIED.
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
NOTES
[1] During the course of this litigation the defendant Fortis began filing documents as "Time Insurance Company f/k/a Fortis Insurance Company."
[2] "Protected health information means individually identifiable health information ... that is (i) Transmitted by electronic media; (ii) Maintained in electronic media; or (iii) Transmitted or maintained in any other form or medium." 45 C.F.R. § 160.103 (1997). "Individually identifiable health information" is defined as:

"[I]nformation that is a subset of health information, including demographic information collected from an individual, and:
"(1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
"(2) Relates to past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
"(i) That identifies the individual; or
"(ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual...."
45 C.F.R. § 160.103 (1997).
[3] JALIC also argues that "it is apparent that the only `need' for the list is to conduct a fishing expedition so that [Beasley's] attorneys can try to conjure up additional clients." (JALIC's brief, p. 24.) In its reply brief, JALIC asserts that "this Court has refused to permit discovery that effectively amounts to a `fishing expedition.'" (JALIC's reply brief, p. 5.) In support of this assertion, JALIC cites Ex parte Wal-Mart Stores, Inc., 682 So.2d 65 (Ala. 1996). Although not crediting it as such, JALIC cites, not the main opinion, but Chief Justice Hooper's dissent in Ex parte Wal-Mart. In that case this Court actually denied Wal-Mart's petition for the writ of mandamus and permitted the discovery the trial court had ordered.